J. I. CASE THRASHING-MACHINE COMPANY, *a Corporation*, V. JOHN J. MICKLEY.

No. 14,321.      (83 Pac. 970.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*"Land" Includes Town Property.* The word "land," when used in a contract, without limitation, is broad enough to include a piece of real property described as a block in a town site.

2. ———— *Reservation—Right to Countermand—Construction.* Where a person enters into a contract for the purchase of a thrashing outfit, but reserves the right to countermand the order if he shall go to Oklahoma and buy land, in the absence of any special circumstances requiring other than an ordinary interpretation of the words used this condition is met by his making a visit to Oklahoma and there purchasing a block in a town site.

Error from Ellsworth district court; ROLLIN R. REES, judge. Opinion filed December 9, 1905. Affirmed.

*Dallas Grover,* and *C. J. Evans,* for plaintiff in error.
*Ira E. Lloyd,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: John J. Mickley agreed in writing with the J. I. Case Thrashing-machine Company to purchase a thrashing outfit from it, the contract containing this provision: "In case party [Mickley] goes to Oklahoma and buys land [he] has the privilege of countermanding this order." The company shipped the machinery, and upon Mickley's refusal to accept it sued him for damages, alleging a breach of the contract. He defended upon the ground that he had countermanded the order, and was justified in doing so by the fact that he had gone to Oklahoma and bought land there. Upon a trial the court directed a verdict for the defendant, and gave judgment thereon, from which the plaintiff now prosecutes error.

There was no substantial controversy over the facts. It was admitted that Mickley had notified the company that he had elected to countermand the order, and that before doing so he had visited Oklahoma and there purchased real estate, described as block 8 in Kingfisher, for $200. The question involved is whether in doing this the defendant had gone to Oklahoma and bought land, within the meaning of the contract.

The plaintiff claims that upon the face of the contract the condition that the defendant should go to Oklahoma and buy land could only be met by his permanently removing to Oklahoma and buying a farm there. In support of this claim it is argued that the word "land," when employed, as it was in this instance, without qualifying words, means at least presumptively agricultural land, as distinguished from town lots or blocks. To this contention we cannot agree. The use of the word "land" as a generic term covering real property of any character is sanctioned by custom and by authority. In its general sense it is defined by Webster as "any portion, large or small, of the surface of the earth, considered by itself, or as belonging to an individual or a people, as a country, estate, farm, or tract." As a law term the same work thus defines it: "Any ground, soil or earth whatsoever, as meadows, pastures, woods, etc., and everything annexed to it, whether by nature, as trees, water, etc., or by the hand of man, as buildings, fences, etc.; real estate." It is used throughout the Kansas statutes as a synonym of "real estate" and "real property." (Gen. Stat. 1901, § 7342, subdiv. 8.) " 'Land,' in its legal signification, comprehends any grounds, soil or earth whatever." (5 Words & Ph. Jud. Def. 3975.)

The contract did not attempt to specify the quantity of land that defendant was to purchase in order to obtain the right to countermand his order. If he had bought an unplatted tract of ground equal in extent to block 8 in Kingfisher it could not be denied upon

any theory that this would have been a purchase of land. The rights of the parties can hardly be thought to be affected in any possible way by the question of whether the tract purchased had been laid out in lots and blocks.

It is suggested that the context shows that arable land and not a town block, and a permanent removal to Oklahoma and not a mere journey thither, were within the contemplation of the parties to the contract, inasmuch as it can be inferred that the defendant inserted the clause in question for his protection in case he should cease to have occasion to use the machinery by reason of his buying a farm elsewhere and going to reside upon it. It may equally well be supposed, however, that the clause was intended to release him in case his contemplated purchase of any Oklahoma real estate should divert enough of his resources to another channel to make it inexpedient for him to invest in this thrashing outfit so large a sum as he could otherwise afford.

Evidence was offered for the purpose of showing that the contract should be given the interpretation for which the plaintiff contends. That upon which the greatest reliance seems to be placed was, in substance, that in a conversation which was had after the contract had been entered into, between the defendant and a representative of the plaintiff, the latter said that the former would not be relieved from his obligation to take the machinery unless he should buy a farm in Oklahoma, and that afterward the defendant inquired of a third person whether he thought the purchase of a town lot or block there would be sufficient to effect his release. Neither this evidence nor any other that was offered had any tendency either to explain away the natural effect of the language of the agreement by exhibiting the circumstances under which it was made or to show that the parties had given it an interpretation different from its obvious meaning.

It is true that the construction placed upon the reservation in the contract by the trial court is literal, but the language used is plain and unambiguous. If it does not mean precisely what it says it would be difficult for any tribunal to attach to it any definite meaning whatever. It is also true that this construction practically makes the entire instrument subject to cancelation at the will of one of the parties, for the defendant, if desirous of escaping its burden, could easily comply with the conditions which would give him that privilege. But it is not apparent that this consideration gives the machinery company any just cause to complain. The contract was voluntarily made, was not unconscionable, and resulted in no hardship. No grounds are presented for a court to grant relief against its terms. The judgment is affirmed.

All the Justices concurring.