No. 52,256

STATE OF KANSAS, *ex rel.*, VERN MILLER, DISTRICT ATTORNEY OF SEDGWICK COUNTY, *Plaintiff-Appellee*, v. MIDWEST SERVICE BUREAU OF TOPEKA, INC., *Defendant-Appellant.*

(623 P.2d 1343)

Opinion filed February 28, 1981.

*Jerry G. Elliott*, of Foulston, Siefkin, Powers, and Eberhardt, of Wichita, argued the cause, and *William R. Sampson*, of the same firm, and *Don W. Riley*, of Wichita, were with him on the brief for the appellant.

*E. Dwight Taylor*, assistant district attorney, argued the cause, and *Vern Miller*, district attorney, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by Vern Miller, district attorney of Sedgwick County, seeking a declaratory judgment, an injunction, and civil penalties under the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.* The defendant, Midwest Service Bureau of Topeka, Inc., is an independent debt collection agency. In the amended petition, the plaintiff charges the defendant with the commission of certain deceptive and unconscionable practices prohibited by the KCPA. The defendant moved to dismiss the action on the ground that the KCPA does not apply to independent debt collection agencies. The trial court overruled defendant's motion to dismiss, holding that the KCPA was applicable to the defendant. Since the issue of law was of controlling significance in the case, the defendant, with the approval of the district court, took an interlocutory appeal pursuant to K.S.A. 60-2102(*b*). The sole issue presented on the appeal

is thus one of law and is essentially this: Is the Kansas Consumer Protection Act (K.S.A. 50-623 *et seq.*) applicable to independent debt collection agencies?

The motion to dismiss was submitted to the trial court on a stipulation of facts which was, in substance, a summary of the legislative history of consumer protection legislation in Kansas. Attached to the stipulation were copies of various Senate and House Bills and reports and recommendations of committees on legislation pertaining to consumer protection and unfair trade practices. Minutes of the House and Senate judiciary committees and "bill briefs" published and circulated during the 1978 session of the legislature were also included. We do not consider it necessary to set forth in full each of these exhibits. Since this case was submitted on a stipulation and documentary evidence, it was not necessary for the district court to evaluate the credibility of any portion of the evidence or to determine any issue of fact. Hence, this court on appeal is in just as good a position to determine the legal issues presented as was the trial court. Accordingly, this court may take a fresh look at the central issue of law and determine that issue de novo. *Clark Equip. Co. v. Hartford Accident & Indemnity Co.,* 227 Kan. 489, 491, 608 P.2d 903 (1980).

The Kansas Consumer Protection Act, effective January 1, 1974, repealed the 1968 Buyer Protection Act (K.S.A. 1972 Supp. 50-601 *et seq.*) and increased the power of both the attorney general and the private consumer to fight deceptive sales practices. The KCPA is much broader than the former law and expands both the types of transactions covered and the persons protected. K.S.A. 50-623 declares that the act is to be construed liberally to promote certain public policies, among which is included the protection of consumers from *suppliers* who commit deceptive and unconscionable practices. K.S.A. 50-624 includes the definitions of various terms as used in the act. The term "supplier" is defined in K.S.A. 50-624($i$) as follows:

"($i$) 'Supplier' means a manufacturer, distributor, dealer, seller, lessor, assignor, or other *person who, in the ordinary course of business,* solicits, engages in, or *enforces consumer transactions,* whether or not he or she deals directly with the consumer." (Emphasis supplied.)

K.S.A. 50-626 prohibits any supplier from engaging in any deceptive act or practice in connection with a consumer transaction.

Specific deceptive acts and practices are described with particularity, but the coverage of the act is not to be limited to those specifically mentioned.

K.S.A. 50-627 proscribes "unconscionable acts and practices" by a supplier. The unconscionability of an act or practice is a question of law for the court. Section (a) of 50-627 states as follows:

"(a) No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or *after the transaction.*" (Emphasis supplied.)

The comment following K.S.A. 50-627 declares that that section forbids "unconscionable advertising techniques, unconscionable contract terms, and *unconscionable debt collection practices.*" K.S.A. 50-628 vests in the attorney general the duty to enforce the act throughout the State of Kansas by receiving and acting on complaints. The specific remedies afforded the attorney general are set forth in 50-632. Private remedies are afforded to a consumer by K.S.A. 1980 Supp. 50-634.

The defendant does not dispute the legal principle that the KCPA applies to debt collection activities when engaged in by a creditor or an agent of a creditor. It is clear that the act does apply to debt collection activities when engaged in by a creditor or his agent. As noted above, the definition of "supplier" as contained in 50-624(*i*) includes any person who, in the ordinary course of business, enforces consumer transactions whether or not he or she deals directly with the consumer. A debt collector is obviously engaged in enforcing a consumer transaction. Also, as noted above, K.S.A. 50-627 defines an unconscionable act or practice as violating the act whether it occurs before, during or *after* the consumer transaction.

The language used in the KCPA is quite similar to that contained in the Uniform Consumer Sales Practices Act. Section 2 of the uniform act includes, within the definition of a supplier, a person who regularly enforces consumer transactions, whether or not he deals directly with the consumer. In Section 3, the uniform act declares that a deceptive act or practice by a supplier violates the act whether it occurs before, during, or after the transaction. Ohio, like Kansas, used the language of the uniform act in the enactment of its consumer practices act (Ohio Rev. Code Ann.

§ 1345.01 *et seq.* [Page 1979]). The Ohio act uses language comparable to the Kansas act in defining a "supplier." There are two cases in Ohio which hold that the collection of, or attempt to collect, a claim which arose from a consumer transaction and which is owed by the consumer to the supplier, constitutes a "consumer transaction" within the purview of the Ohio Consumer Sales Practices Act. *Liggins v. May Co.,* 44 Ohio Misc. 81, 337 N.E.2d 816 (1975), holds that an assignee, which was engaged in the business of enforcing or attempting to enforce the payment of a claim or debt which arose as a result of a consumer transaction, was engaged in the business of effecting a consumer transaction and was, therefore, a "supplier" under the Ohio Consumer Sales Practices Act. Following this decision a later Ohio case with the same title held that an independent debt collection agency was a "supplier" as the term is defined in the Ohio Consumer Sales Practices Act, when, after being hired by a seller of merchandise on credit in a consumer transaction, it attempted to enforce the seller's claim against the buyer. *Liggins v. May Co.,* 53 Ohio Misc. 21, 373 N.E.2d 404 (1977). Counsel have not cited any other cases construing the term "supplier" under a consumer protection act nor has our research disclosed any additional cases.

From the above analysis, it logically follows that the KCPA is applicable to independent debt agencies, unless there is something in the legislative history of the act which requires us to reach a contrary interpretation. In his brief, counsel for the defendant summarizes the legislative history of the KCPA, including the pertinent predecessor bills and subsequent amendments. We quote the essential portion of counsel's summary which states his basic contentions on this appeal:

"The Kansas Legislature first considered the regulation of consumer transactions in 1971, when Senate Bill 357 ('S.B. 357') was proposed. . . . 'This bill was the Uniform Consumer Sales Practices Act as approved by the National Conference of Commissioners on Uniform State Laws, and was aimed, generally, at preventing fraudulent and deceptive practices in connection with consumer sales transactions.' . . . Nothing in either the bill's statement of purpose or its text dealt with debt collection. The subcommittee considering the bill recommended that it not be passed and that a substitute bill be prepared, and a related consumer protection bill was introduced in the 1972 Legislature. This was Senate Bill 587 . . . .

"S.B. 587 *did* discuss debt collection; in fact, it contained an entirely new article—Article IV—'designed to prevent abusive practices in regard to collection of debts.'

"S.B. 587 not only contained a new article dealing with debt collection but also contained *specific references to debt collection* in both the statement of purpose and the definitions. One of the 'policies' of the bill was § 1(d): 'to protect consumers from abusive debt collection activities.' And of the definitions contained in § 2, the following were important:

"(k) 'Debt collection' means any action, conduct or practice in connection with the solicitation of claims for collection or in connection with the collection of claims, that are owed or due, or are alleged to be owed or due, a merchant by a consumer;

"(l) 'Debt collector' means any person engaging directly or indirectly in debt collection, and includes any person who sells or offers to sell forms represented to be a collection system, device or scheme intended or calculated to be used to collect claims;

*"Separately defined* in § 2 was the term 'supplier':

"(aa) 'Supplier' means a seller, lessor, assignor, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer.

"Thus, as organized in S.B. 587, 'debt collectors' were different than 'suppliers' and their conduct was regulated entirely within Article IV, found at pp. 30-35 of the bill. . . .

"S.B. 587 was reported unfavorably, and in the period between the 1972 and 1973 Sessions, the Special Committee on Consumer Protection and Unfair Trade Practices considered the area and issued its 1973 Interim Report. Attached to that report was Proposed Bill No. 802, a slight modification of S.B. 587. Like its predecessor, Proposed Bill No. 802 expressly dealt with debt collection. . . .

"Proposed Bill No. 802 stated this policy, among others:

"(c) to protect consumers from unbargained for warranty disclaimers and abusive debt collection activities; . . .

"In its definitions section were the following terms:

"(d) 'Debt collection' means any action, conduct or practice in connection with the solicitation of claims for collection or in connection with the collection of claims, that are owed or due, or are alleged to be owed or due, a merchant by a consumer, whether or not they arise from a consumer sales transaction.

"(e) 'Debt collector' means any person engaging directly or indirectly in debt collection, and includes any person who sells or offers to sell forms represented to be a collection system, device or scheme intended or calculated to be used to collect claims. . . .

. . . .

"(n) 'Supplier' means a seller, lessor, assignor, or other person who regularly solicits, engages in, or enforces consumer sales transactions, whether or not he deals directly with the consumer. . . .

"And its Article 4, at p. 181, would have regulated debt collection in Kansas.

"At the request of the Special Committee, Senators Bennett, Bell, Rogers, and Hess submitted the Proposed Bill to the 1973 Session of the Kansas Legislature as Senate Bill 17. . . . The statement of purpose and definitions were identical to those of the Proposed Bill, and Article 4, beginning at p. 29, dealt with 'DEBT COLLECTION.' S.B. 17 was amended by Senate Committee, amended by Senate

Committee of the Whole, amended by House Committee, and at last enacted as the Kansas Consumer Protection Act. As enacted, *every single reference* to debt collection had been deleted. No statement of policy, no definition, and no Article 4 remained. Nothing in the enacted language of the new statute even hinted at the regulation of debt collection. . . .

"Significantly, in the 'purpose' portion . . . Exhibit G, the phrase 'regulating debt collection practices and prohibiting certain practices' *was specifically stricken by interlineation.*

"Yet another Special Committee considered the topic of regulating debt collection between the 1973 and 1974 Sessions and made a report . . . . The Committee's 'Background' statement is an important comment upon the legislative history of the Act and is repeated here in its entirety:

"*Reports of Special Committees to the 1974 Kansas Legislature*

"Re: Proposal No. 19—DEBT COLLECTION

"Background

"Proposal No. 19 was assigned to the Special Committee on Consumer Protection for a study of 'the need for regulating the debt collection business including the feasibility of licensing debt collectors.' The source of this study was the legislation proposed by last year's Special Committee on Consumer Protection to regulate the business of debt collection as contained in Article 4 of the original version of 1973 SB 17 (Kansas Consumer Protection Act).

"*While SB 17 was enacted into law by the 1973 legislature, the debt collection provisions which were originally in the bill were deleted prior to passage* by the House Judiciary Committee upon recommendation of a subcommittee assigned consideration of the bill. For the most part, this recommendation was based on an inability to review and analyze the numerous objections in the relatively short period of time which was available. The most oft-repeated criticisms were that the debt collection provisions were too broadly and vaguely worded.

"Thus, a debt collector might be unsure and confused as to what was or was not legal under the bill. In addition, it was argued that the provisions were drafted so broadly as to encompass activities not meant to be prohibited. Further, some people were of the opinion that if there is debt collection abuse in Kansas, the proper approach would be to license debt collectors. . . .

"As the Stipulation indicates, the Special Committee prepared and submitted yet another bill designed to regulate debt collection in Kansas—Senate Bill 619 . . . . The Committee was 'of the opinion that its recommended bill (SB 619) [would] not only provided needed protections against abusive practices for consumers in today's credit-oriented society but, at the same time, [would] provide some definitive measure of guidance for creditors whose business is dependent upon the collection of just and owing debts.' . . . The Committee described its proposed bill as 'patterned substantially after the proposed legislation submitted by the Kansas Retail Council and the debt collection provisions of SB 17' . . . and it provided, at pp. 19-2, 19-3, and 19-4, a summary of the proposed bill, which was designed to apply to 'the collection of consumer debts.' *S.B. 619 was not enacted.*

"Since 1974, the Kansas Legislature has considered the Consumer Protection Act on various occasions and has amended it slightly; but it has *never* added a single word that deals with debt collection."

After careful review of the legislative history, we have concluded that the district court was correct in holding that KCPA, *as enacted*, should be construed to include, within its application, independent debt collection agencies, and that the legislative history discussed above does not require us to find a contrary legislative intent. It is clear to us that the legislature, after much discussion and consideration, simply concluded that it wanted to adopt the basic provisions of the Uniform Consumer Sales Practices Act and not the more specific provisions covering debt collection activities as contained in the various bills which were proposed. From the beginning, these specific debt collection provisions were challenged as being worded so vaguely as to be subject to numerous and varying interpretations. We note that the debt collection sections of the proposed bills prohibited any debt collector from engaging in conduct deemed the practice of law, unless the debt collector was a licensed attorney in this state. The proposed section then set forth a list of specific acts which were to be deemed the practice of law. The provisions contained in the proposed debt collection articles prohibited a wide variety of activities and practices which were not included in the uniform act. At the hearings before the various legislative committees, representatives of the Kansas Association of Finance Companies, Kansas Bankers Association, Kansas Credit Union Leagues, and other business institutions appeared. They urged the adoption of some version of the Uniform Consumer Sales Practices Act and opposed the specific debt collection provisions as being "worded so vaguely as to be subject to numerous and varying interpretations" and being so inclusive as to limit responsible and reasonable attempts to collect legitimate debts. The pressure of these various organizations undoubtedly had its effect. It is probable that the legislature decided to adopt a consumer protection act in a form similar to the Uniform Consumer Sales Practices Act rather than enacting a wholly new statute governing debt collection agencies as a separate and distinct activity.

We have, thus, concluded that the legislative history does not require us to abrogate or nullify the plain language of the KCPA as finally enacted. Did the legislature intend to permit a creditor to do indirectly what he is not permitted by statute to do directly? We doubt it. We cannot imagine that the legislature intended that an independent debt collection agency may lawfully engage in

deception and unconscionable acts and practices which are prohibited if engaged in by the original creditor or one of his agents. We hold that an independent debt collection agency falls within the definition of a "supplier" and is subject to the provisions of the KCPA, if it is found that three specific conditions exist:

(1) The debt sought to be enforced came into being as a result of a consumer transaction;

(2) The parties to the original consumer transaction were a "supplier" and a "consumer" as defined in the act; and

(3) The conduct complained of, either deceptive or unconscionable, occurred during the collection of, or an attempt to collect, a debt which arose from the consumer transaction and was owed by the consumer to the original supplier.

The judgment of the district court is affirmed.

SCHROEDER, C.J., dissenting.