(627 P.2d 1190)
No. 51,478

PAULA WILLMAN, *Plaintiff-Appellant*, v. DALE and RICHARD EWEN, d/b/a EWEN MOTOR COMPANY, *Defendants-Appellees*.

Opinion filed May 15, 1981.

*Bryson R. Cloon,* of Cloon & Bennett, of Overland Park, for appellant.

*Charles F. Forsyth,* of Erie, for appellees.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

WOLESLAGEL, J.: Plaintiff's petition alleged that she was entitled to damages because the defendants failed to deliver an Indianapolis Pace Car she had ordered. The purchase order provided that the defendants would not be "liable for failure to effect delivery." Relying upon those words, the trial court entered summary judgment for defendants. The trial judge noted that the Kansas Consumer Protection Act condemned unconscionable practices even if committed after "the transaction." He concluded, however, that this was "irrelevant because if the attacked clause (of the purchase order) is not unconscionable there is no liability." Disagreeing with this conclusion, and finding that the plaintiff pleaded—and had deposition support for—a pattern of conduct by defendants after the order was signed which was unconscionable, we reverse.

On February 1, 1978, plaintiff contacted Larry Miller, a Chanute car dealer, to purchase a 1978 Chevrolet Corvette, which had

been chosen to be the pace car for the annual Indianapolis 500 race. Apparently, the pace car was a limited and special product and a number of duplicates were to be furnished which dealers could purchase, but no dealer was entitled to more than one. Mr. Miller had already committed his to someone else, but he telephoned defendant Rich Ewen, who said that if their car was not sold plaintiff could buy it. They agreed it would be sold at list price.

The Ewen car agency is owned by Dale Ewen. His sons Richard and Randy are salesmen for the agency, which operates under the name Ewen Motor Company. Rich sent that company's purchase order, dated February 1, to Miller to be delivered to the plaintiff. It bore her name as "purchaser." It described the car in detail, set the price and listed a $1,000 down payment. Also it set forth a delivery date of "Approx. - May, 1978." It provided that she agreed to purchase under the specified terms. The order was on a form printed or distributed by a California corporation, and relative to the dealer's obligation, it provided:

"It is agreed, however, that neither you nor the Manufacturer will be liable for failure to effect delivery."

Within a few days the form was signed by plaintiff as purchaser and by Richard Ewen as "accepted." Plaintiff's $1,000 deposit check was dated February 1, and paid by a Kansas City bank on February 6. Plaintiff did not herself contact the defendant until April.

Rich learned on February 2 that his dealership's car had been sold to another two weeks earlier, but was told by Dale that plenty were available and not to worry, that another could be located.

Not, however, until late in March, and then in April and in May, did the Ewens attempt to obtain a second car. They then found that these cars were being held for several thousand dollars over list price.

In March or April plaintiff's brother inquired about delivery and Rich told him it was en route. In April, Rich told plaintiff that they intended to keep it on "promotional display" through Memorial Day, the day of the race at which one of this model would be a "Pace Car" in a procession. He also told her he wanted her to title her car in Neosho County. He didn't tell her they had another contract for their one car because, "I was quite certain that we would receive another car." In May, Dale thought he could secure

a second car at a modestly inflated price but that didn't material-
ize. Later in May, the company sent plaintiff an explanatory letter
and returned her deposit.

Plaintiff's lawsuit that followed alleged breach of contract,
violation of the Kansas Consumer Protection Act, K.S.A. 50-623 *et
seq.*, and fraud. Fraud, however, was not briefed or argued on
appeal. Under *Steele v. Harrison,* 220 Kan. 422, Syl. ¶ 5, 552 P.2d
957 (1976), we consider it abandoned.

After the defendants filed a responsive pleading, the parties
presented to the trial court a "Motion to Determine Issues of Law
Before Trial," signed by *both* parties. It asked the court to deter-
mine two law issues "prior to formulation of pre-trial issues
herein." It said they would submit briefs within twenty days, and
they submitted them. The issues, briefly stated, were: (1) Did the
contract bind Ewen to deliver or "are the terms contingent upon
delivery?" and (2) do plaintiff's three causes of action state facts
sufficient to constitute a cause of action?

The motion contained basic stipulations, asked the court to
determine the law issues "based on the pleadings, [and] all
discovery transcripts," and stated the parties would attempt to
agree upon a pretrial order if anything was to be tried. The
"discovery transcripts" apparently related to depositions of the
parties which had been taken.

With this type of request, the trial judge understandably ex-
pressed some concern as to what he had before him and what
perimeters for action were legally available to him. He apparently
resolved the problem by stating, "I am undertaking to comply
with the motion on the premise that attorneys can agree upon just
about anything except the conferring of jurisdiction." Having so
concluded, he granted summary judgment to defendants.

Four issues are raised by the plaintiff on appeal:

1.   The trial court erred in failing to hold that as a matter of law
a seller may not compel a consumer to waive the protections
afforded him by the Kansas Consumer Protection Act.

2.   The trial court erred in failing to apply the standards set
forth in the Kansas Consumer Protection Act in determining the
character of a deceptive trade practice.

3.   The trial court erred both in law and in fact in holding that
the actions of the defendants were lawful based solely upon a
finding that the contract itself was not unconscionable on its face.

4. The trial court erred in determining that the Motion to Determine Issues of Law Before Trial was in fact a submission for Summary Judgment under Supreme Court Rule 141 (225 Kan. lxviii).

We find plaintiff's first point is not well taken. Under K.S.A. 50-625, "a consumer may not waive or agree to forego rights or benefits under this act." Accordingly, a customer may not be forced to waive the protection of the act. But there is nothing in the record indicating that plaintiff waived protection. There is no indication that it was even suggested that she do so, let alone that defendants compelled her to do so. There being no compulsion indicated, there was no reason for the trial judge to make the ruling that a seller may not compel a consumer to waive the protection of the act.

The second point relied upon by plaintiff we find also to be without merit. From the memorandum filed by the trial judge there is no indication that he failed to apply the standards of the Kansas Consumer Protection Act *in determining the character of a deceptive trade practice.* The implication from his writing is that he did use the act to determine the nature of deceptive practices. He just decided that the act didn't apply. His reasoning was:

"Under the Commercial Code unconscionability is to be determined as of the time when the contract was made (84-2-302), whereas under the Consumer Protection Act an unconscionable act or practice is a violation whether committed before, during or after the transaction (50-627). The latter appears to be irrelevant because if the attacked clause is not unconscionable there is no liability. The sine qua non of plaintiff's complaint, however pleaded in the three causes of action, is that a car was not delivered to her."

As an explanatory matter, the Kansas Consumer Protection Act does not define unconscionable conduct. It sets forth certain things for a court to consider, but states they are not the exclusive tests by which a court should determine unconscionability. The Kansas Comment following K.S.A. 50-627 indicates that improper actions under this act are like improper acts under the Kansas Uniform Commercial Code. That Code, likewise, does not attempt to define unconscionable conduct. Under the Kansas Comment following K.S.A. 84-2-302, it speaks of contracts that cause "unfair surprise." The second comment to that section of the statute is that of the Permanent Editorial Board for the Uniform Commercial Code and is designated Official UCC

Comment. It lists many cases with a brief narrative of actions that have been held to be unconscionable conduct.

The trial judge specifically referred to K.S.A. 84-2-302 as the Kansas Comment to K.S.A. 50-627, in effect, suggests. It follows that he used the Kansas Consumer Protection Act as it relates to *determining* a deceptive trade practice. *Failure to find the act applicable* is not the point the plaintiff relies upon in this specification of error.

We do agree, however, with plaintiff as to the third point relied upon. A distinction between the Uniform Commercial Code and the Consumer Protection Act is that the former provides that unconscionability is to be determined "at the time" the contract was made (K.S.A. 84-2-302) while the latter embraces acts occurring "before, during or after" the transaction (K.S.A. 50-627).

With the narrative of events already given, it would seem that to mislead plaintiff for over three months into believing her order would be filled effectively deprived her of any opportunity she might have had to obtain the type of car she wanted from some other dealer. There being no valid reason appearing of record as to why she could not have been notified of the earlier sale a few days after February 1, unconscionability occurring "after the transaction" would be indicated. More specifically, K.S.A. 50-626(*b*)(3) classes "failure to state a material fact" as a deceptive practice. The earlier sale of Ewen's allotted car seems to us to be a material fact. Since a cause of action was stated and supported by the discovery record, summary judgment was erroneous and reversal is required.

The final point relied upon by plaintiff thus becomes unnecessary for the decision in this case.

Reversed and remanded.