No. 51,478

PAULA WILLMAN, *Plaintiff-Appellant,* v. DALE EWEN and RICHARD EWEN, d/b/a EWEN MOTOR COMPANY, *Defendants-Appellees.*

(634 P.2d 1061)

Opinion filed October 23, 1981.

*Bryson R. Cloon,* of Cloon & Bennett, of Overland Park, argued the cause and was on the brief for the appellant.

*Ronald P. Wood,* of Erie, argued the cause, and *Charles F. Forsyth,* of Erie, was with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This case is before the Supreme Court following the granting of a petition for review of the decision of the Court of Appeals in *Willman v. Ewen,* 6 Kan. App. 2d 321, 627 P.2d 1190 (1981). This is an action brought by the plaintiff-appellant, Paula Willman, to recover damages from the defendants-appellees, automobile dealers doing business as Ewen Motor Company, following the defendants' failure to deliver a 1978 Chevrolet Corvette Indianapolis 500 Pace Car. The district court granted summary judgment to the defendants based on the pleadings and the discovery depositions of the parties.

For purposes of this appeal, we will construe the evidence in the depositions against the defendants in determining whether or not summary judgment was properly granted to the defendants.

We will assume the following facts to be true: On February 1, 1978, plaintiff, Paula Willman, a resident of Kansas City, telephoned Larry Miller, a family acquaintance and car dealer in Chanute, Kansas. Plaintiff wanted to buy a special edition 1978 Chevrolet which had been designated as the 1978 Indianapolis pace car. She wanted the car as a personal investment, either to drive, warehouse, or sell. Larry Miller told plaintiff that his pace car had been sold, but he thought Ewen Motor Company in Erie, Kansas, had such a car. Miller called Rich Ewen who operated Ewen Motor Company with his father, Dale, and a brother, Randy. Ewen told Miller that he did not know if the car had been sold, but that, if it was not sold, plaintiff could buy it. They agreed it would be sold at the list price of approximately $13,800. A written purchase order was made out by Ewen Motor Company to Paula Willman. It described the car in detail, set the price, and listed a $1,000 down payment. It established the approximate date of delivery as May 1978. Larry Miller forwarded one copy of the purchase order to plaintiff, and plaintiff mailed to Miller a personal check for the down payment to Ewen Motor Company in the sum of $1,000. The check was dated February 1, 1978, and was received by Ewen Motor Company on February 3 or 4. The purchase order contained the following provision at the top of the first page:

"Delivery is to be made Approx. - May, 1978, as soon thereafter as possible. *It is agreed, however, that neither you nor the Manufacturer will be liable for failure to effect delivery."* (Emphasis supplied.)

The day following the conversation between Rich Ewen and Larry Miller, Rich Ewen was advised by his father, Dale Ewen, that the pace car allocated to their dealership had already been sold to another customer. Their depositions indicate that both Rich Ewen and Dale Ewen knew that only one pace car had been allocated by General Motors to each dealer, but they hoped to obtain a car from another dealer in order to fulfill their sales contract with the plaintiff. The defendants never ordered another car from General Motors, having made the decision not to do so in February of 1978. The Ewens called several dealers in surrounding cities, attempting to locate another pace car but could not find one at a price to meet the quoted price contained in the plaintiff's purchase order. Pace cars were available only for $18,000 or more.

In March of 1978, plaintiff's brother was in Erie, Kansas, and stopped by Ewen Motor Company to inquire about plaintiff's car. Rich Ewen advised plaintiff's brother that her car would be delivered and gave him the dealer order number on the car and the date when the car would be released from the factory for delivery to plaintiff. In April, the plaintiff telephoned Ewen Motor Company to ascertain when her car would be available. Rich Ewen advised plaintiff that the car was coming and he was expecting it in at any time. He advised her that he wanted to delay delivery of her car, because the company wanted to put it on promotional display through Memorial Day weekend. Rich Ewen also advised plaintiff that they wanted her to title her car in Neosho County, in order for the dealership to get proper credit from General Motors.

It appears from the discovery depositions that neither Rich Ewen or Dale Ewen or any other employee of the company during the period between February 1 and May 9, 1978, advised the plaintiff that the original pace car allocated to them had been sold to another customer and that the company was trying to locate another car for her from other dealers in the area. On the contrary, the defendants made affirmative statements to the plaintiff that the pace car would be delivered by the manufacturer early in May. In May of 1978, the defendants sent the plaintiff a letter advising her that she would not receive a car and enclosing the company's check dated May 9, 1978, in the amount of the original down payment. On August 2, 1978, plaintiff sued the Ewen Motor Company for damages, alleging breach of contract, violation of the Kansas Consumer Protection Act (K.S.A. 50-623 *et seq.*) and fraud. After the defendants filed a responsive pleading, the parties presented to the trial court a joint motion to determine two issues of law before trial: (1) In view of the contract provision, was Ewen bound to deliver the automobile so as to be liable in damages for nondelivery? and (2) Do plaintiff's three causes of action in her petition state facts sufficient to constitute a valid cause of action?

The joint motion contained basic stipulations and, in substance, moved the court to determine the legal issues based on the pleadings and discovery depositions. Briefs were submitted and the district court then granted summary judgment in favor of the defendants. The basis for summary judgment was the contract

provision that neither Ewen nor the manufacturer would be liable for failure to effect delivery of the automobile. The trial court found nothing unconscionable in the contract provision which would make it unenforceable under the Uniform Commercial Code (K.S.A. 84-2-302). The court concluded that the basic theory of plaintiff's three causes of action was that the car was not delivered to her and, if the clause in the contract was valid, there could be no liability under any of plaintiff's theories.

Plaintiff appealed to the Court of Appeals which held, in substance, that plaintiff had no cause of action on the theory of a breach of contract, because, at the time the contract was entered into, the contract provision relieving the defendants from liability for nondelivery was not unconscionable. The Court of Appeals concluded, however, that the district court erred in granting summary judgment against the plaintiff's second cause of action which was based on a deceptive or unconscionable practice under the Kansas Consumer Protection Act. The case was reversed and remanded to the district court for trial on the factual issues raised by the parties. The Supreme Court granted review on the petition of the defendants.

We will first consider whether the contract provision relieving Ewen Motor Company and the manufacturer from liability for nondelivery was a valid and enforceable provision when the contract was entered into. We agree with the trial court and the Court of Appeals that the contractual provision in question is not unconscionable and was valid and enforceable at that time. We have held on a number of occasions that restrictions on liability in sales contracts will be enforced if they are reasonable and are voluntarily agreed to by the parties to the contract. *Wille v. Southwestern Bell Tel. Co.,* 219 Kan. 755, 549 P.2d 903 (1976); *Kansas City Structural Steel Co. v. L.G. Barcus & Sons, Inc.,* 217 Kan. 88, 535 P.2d 419 (1975); *Merchantile Co. v. Canning Co.,* 111 Kan. 68, 206 Pac. 337 (1922); *Case v. Mickley,* 72 Kan. 372, 83 Pac. 970 (1905).

In *Wille,* it is pointed out that American courts have traditionally taken the view that competent adults may make contracts on their own terms, provided they are neither illegal nor contrary to public policy, and that in the absence of fraud, mistake, or duress a party who has fairly and voluntarily entered into such a contract is bound thereby, notwithstanding it was unwise or disadvan-

tageous to him. Gradually, however, this principle of freedom of contract has been qualified by the courts as they were confronted by contracts so one-sided that no fair-minded person would view them as just or tolerable. The doctrine of unconscionability received its greatest impetus when it was enacted as a part of the Uniform Commercial Code (K.S.A. 84-2-302) which provides in part as follows:

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

The doctrine was further extended by the enactment of the Uniform Consumer Credit Code (K.S.A. 16a-5-108), the Consumer Protection Act (K.S.A. 50-627), and the Residential Landlord and Tenant Act (K.S.A. 58-2544).

The UCC neither defines the concept of unconscionability nor provides the elements or perimeters of the doctrine. As pointed out in the opinion of *Wille,* perhaps this was the real intent of the drafters of the code, for to define the doctrine is to limit its application, and to limit its application is to defeat its purpose. In *Wille,* the court identified ten factors or elements as aids for determining whether or not the doctrine of unconscionability should be applied to a given set of facts. The cases seem to support the view that there must be some element of deceptive bargaining conduct present as well as unequal bargaining power to render the contract between the parties unconscionable.

We agree with the Court of Appeals that the provision in the purchase contract restricting the dealer's liability for nondelivery of an automobile was not unconscionable under the circumstances and would have been valid, provided the defendants had given plaintiff timely notice of their inability to obtain her automobile from the manufacturer. That would have terminated the defendants' contractual obligations, and plaintiff would have been free to take steps to obtain an Indianapolis pace car from some other dealer.

The controversy arose in this case because the defendants not only failed to give the plaintiff timely notice of their inability to obtain the special pace car from the manufacturer, but, in fact, affirmatively misled her about the availability of the car. The

basic issue presented in the case is whether the defendants' misleading statements to the plaintiff would support a claim of plaintiff against the defendants on the theory that such actions constituted a deceptive or unconscionable act or practice under the Kansas Consumer Protection Act.

K.S.A. 50-623 states the Kansas legislative policy that the Kansas Consumer Protection Act shall be construed *liberally* to protect consumers from suppliers who commit deceptive and unconscionable practices. It is undisputed here that the plaintiff was a consumer and that the contract for sale in this case constituted a consumer transaction within the meaning of the act. K.S.A. 50-626(*a*) provides that no supplier shall engage in any deceptive act or practice in connection with a consumer transaction. K.S.A. 50-626(*b*) lists a number of deceptive acts and practices which are declared to be violations of the act. K.S.A. 50-626(*b*)(3) lists as a deceptive practice, "the intentional failure to state a material fact or the intentional concealment, suppression or omission of a material fact, whether or not any person has in fact been misled."

K.S.A. 50-627 prohibits unconscionable acts and practices. An unconscionable act or practice violates the act whether it occurs before, during or after the transaction. The unconscionability of an act is a question of law for the court to determine. K.S.A. 50-627(*b*)(6) lists as an unconscionable practice:

"(6) that he or she made a misleading statement of opinion on which the consumer was likely to rely to his or her detriment."

The Kansas Consumer Protection Act was interpreted in *Bell v. Kent-Brown Chevrolet Co.,* 1 Kan. App. 2d 131, 561 P.2d 907 (1977) and in *Meyer v. Diesel Equipment Co., Inc.,* 1 Kan. App. 2d 574, 570 P.2d 1374 (1977). In *Bell* it was held that prior knowledge or intent to violate the act is not a requirement and that there may be liability even though the deception or unconscionable practice was performed innocently and without the intent to injure the consumer.

With these statutes and cases in mind, we turn now to the factual circumstances as developed during discovery. Interpreting these circumstances in a light most favorable to the plaintiff, as we are required to do on summary judgment, we have concluded that the Court of Appeals was correct in holding that a cause of action under the Kansas Consumer Protection Act was

stated by the petition and is supported by the discovery depositions and, further, that the granting of summary judgment by the district court was erroneous.

As noted by the Court of Appeals, the Kansas Consumer Protection Act is not limited to conduct existing at the time the contract was made. The act embraces unconscionable acts or practices occurring "before, during or after" the transaction. K.S.A. 50-627. Here there is evidence to show that the defendants misled the plaintiff for a period of over three months into believing that her order would be filled by the manufacturer, which could have deprived her of the opportunity to obtain the car she wanted from some other source. There is no valid reason appearing in the record why the defendants, as suppliers, did not notify the plaintiff-consumer that the Indianapolis pace car allocated to that dealership had already been sold to another customer at the time the plaintiff's down payment was received and deposited. In this case there was more than mere silence or inaction. It appears that the defendants on several occasions assured plaintiff that her automobile was on its way and that it would be delivered to her in May when it was received from the manufacturer. Summary judgment was, therefore, erroneous.

The judgment of the Court of Appeals is affirmed. The judgment of the district court is reversed and the case is remanded to the district court for further proceedings to determine the factual issues presented by the parties.

FROMME, J., dissenting. The plaintiff knew the 1978 Chevrolet Corvette Indianapolis 500 Pace Car was a limited edition in short supply; she had unsuccessfully tried to secure one from another dealer. Knowing this, she entered into a written agreement with the defendant motor company. The agreement provided:

"Delivery is to be made Approx. - May, 1978. . . . It is agreed, however, that neither you [motor company] nor the Manufacturer will be liable for failure to effect delivery."

The purchaser made a $1,000.00 down payment on the contract. On May 9, 1978, the motor company notified Paula Willman, the plaintiff, they could not deliver such a car. A refund check for $1,000.00 was mailed to her and she cashed the check on May 12, 1978. This court holds the provision in the contract restricting liability for failure to deliver was proper and binding.

It was not an unconscionable provision. The prospective purchaser was notified and she had her refund check in hand within the period of time allowed in the agreement for delivery - May, 1978.

I cannot agree with the court that even though the contract provision was proper the motor company committed an unconscionable act in this case.

K.S.A. 50-627 provides that an unconscionable act or practice violates the act whether it occurs before, during, or after the transaction. A "laundry list" of nonexclusive acts which are merely examples of those acts which might be determined unconscionable then follows. Some of these examples apply to actions before a transaction is entered into; some apply to actions taking place during the transaction; and some apply to actions occurring after the transaction has been completed. Professor Barkley Clark in *The New Kansas Consumer Legislation,* 42 J.B.A.K. 147, 189 (1973), points out:

"[S]ection 5 [K.S.A. 50-627] forbids unconscionable advertising techniques, contract terms, and debt collection practices, with a non-exclusive 'laundry list' of violations spelled out in the statute."

In *State ex rel. Miller v. Midwest Serv. Bur. of Topeka, Inc.,* 229 Kan. 322, 324, 623 P.2d 1343 (1981), this court, speaking through Mr. Justice Prager, divided this statutory "laundry list" of unconscionable acts into these same three categories: (1) Advertising techniques, (2) contract terms, and (3) debt collection practices. Advertising techniques refer to those acts occurring before the transaction. These are not in the present case. Contract terms refer to those matters occurring during the transaction and the court holds the contract was valid. Debt collection practices refer to actions occurring after the transaction and the down payment was returned without prior demand. This is not a debt collection case.

The failure of the salesman for the motor company to notify plaintiff occurred after the contract had been executed. The alleged statements of the Ewen brothers that the car would be delivered did not constitute an unconscionable act as contemplated by the statute.

The question of whether an act is unconscionable is a question for the trial court to decide. K.S.A. 50-627(*b*) so provides:

"(*b*) The unconscionability of an act or practice is a question for the court. In

determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following:"

See also *Meyer v. Diesel Equipment Co., Inc.,* 1 Kan. App. 2d 574, 578, 579, 570 P.2d 1374 (1977).

In the present case the trial court determined the acts were not unconscionable since they were not in contravention of the terms of the agreement. The trial court concluded the provision in the contract which relieved the dealer and manufacturer from liability for failure to deliver was valid, that the contract was terminated, that the down payment was refunded before the time limited for delivery of the car, and that the acts of the Ewens were not unconscionable within the meaning of the statute.

I agree with the trial court and believe that this court should not substitute its judgment for that of the trial court. I find no abuse of discretion. I cannot say that no reasonable judge knowing the facts of the case could hold the acts were not unconscionable under the provisions of the statute. That is the test for an abuse of judicial discretion.

The majority holding in this case opens the door to consumer protection act suits which were never contemplated by the act itself. The decision has the effect of adding to and changing the terms of a written contract.

It adds a provision that time is of the essence and, if the dealer cannot deliver the car previously allotted to the dealer, but not yet delivered by the manufacturer, the dealer must notify the consumer of this fact immediately and before attempting to locate the merchandise elsewhere.

If the purchaser had a cause of action it was for fraud and misrepresentation, not for violating the Consumer Protection Act. Therefore, I respectfully dissent.

HERD, J., joins the foregoing dissenting opinion.