No. 87,177

STATE OF KANSAS *ex rel.* CARLA J. STOVALL, Attorney General, *Appellant*, and KANSAS BOARD OF PHARMACY v. CONFIMED.COM, L.L.C., d/b/a VSOURCE and CONFIMED.COM., Defendants, and H. LEVINE, M.D., *Appellee*.

(38 P.3d 707)

 Opinion filed
January 25, 2002. 

*David L. Harder*, assistant attorney general, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellant.

*James R. Jarrow*, of Baker Sterchi Cowden & Rice, L.L.C., of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This appeal presents the narrow question of whether a nonresident medical doctor who was later enjoined from prescribing or dispensing prescription medicine within the state of Kansas also committed unconscionable acts under the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.*, when he dispensed the sexual enhancement drug Viagra to Kansas residents without any physical examination or direct contact other than through an out-of-state internet site. Highly summarized, the Kansas Attorney General conducted a "sting" operation whereby two individuals, one a minor, obtained Viagra from a website operated by Howard J. Levine, a state of Washington medical doctor. The trial court granted the State's request for an injunction against Dr. Levine but refused to hold his actions were unconscionable under the KCPA; from such ruling the State appeals.

The State contends the trial court erred in limiting its analysis to the statutory examples of unconscionability found in K.S.A. 2000 Supp. 50-627 and by failing to liberally construe the KCPA as required by K.S.A. 50-623. It also contends a $75 charge for an online medical consultation, prescribing Viagra without personal physical examination, and dispensing Viagra to a minor without consultation with the parents were individually or collectively unconscionable acts.

We first set forth the details of the transaction, which was done at the request of the Attorney General. One of the purchasers, Stuart Nelson, was a minor and the son of Special Agent Teresa Salts. The other purchaser was Special Agent Angelia Crawford.

In attempting to purchase the product, both individuals accessed a website entitled Vsource. They were directed through numerous pages of information, including waivers, general information about the drug, credit card information, and an online consultation regarding medical and sexual history. The first page described the online consultation process as well as the potential for international consultation. The next page was a waiver, stating the reader releases "this service" from all liability associated with the reader's participation in "the Viagra program." To continue, the reader agrees he or she is over 21 years of age, does not live in a state that limits access to medication over the internet, has read all available information from the Viagra manufacturer about the potential side effects, is solely interested in personal use of the product for "treatment of compromised sexual performance," and has recently performed "complete annual history physical examinations and appropriate laboratory studies" to ensure good health. The waiver appeared to have a link to the information available from the pharmaceutical manufacturer. The general information page on the website stated the recommended dosage of Viagra and its indications and warned that individuals taking organic nitrates must not take Viagra.

The next area of the website set forth that an online consultation was available for patients without a prescription. In limiting the efficacy of the consultation, the website stated: "It is in no way a substitute for a general medical history and physical examination determining general good health with special attention to blood pressure and cardio-pulmonary (heart and lung) status." The screen further informed the reader that the fee for the online consultation was $75 and would be charged only if the buyer was approved.

The next series of pages viewed by potential buyers was the online consultation form which both Crawford and Nelson at separate times and in separate locations completed.

The parties affirmatively admitted when they filled out the online form that they understood the potential side effects of Viagra and that they would be billed $75 for this consultation only if their application was approved and that all information provided was

"truthful and complete." Nelson left blank the questions concerning allergies and the taking of other prescription medication and did not indicate that he had any of the 15 specific medical problems listed. He left blank the questions concerning his sexual health and changes in sexual function but did answer affirmatively that he had problems achieving erection and stated he had not been evaluated for erectile dysfunction. He stated his date of birth was November 1982. His mother provided him her credit card number and personally supervised the entire order.

Agent Crawford filled out the same form, with similar answers. She stated she was a female on her first attempt to purchase the drug. An individual named Debra attempted to contact Crawford several times, with the call eventually taken by another agent who posed as Crawford. Debra stated that the order could not be processed for a female, but Debra suggested that Crawford could have a male friend order the drug for her. Agent Crawford resubmitted an order under the name of "Frederick Crawford," listing his birthdate as August 1972.

Both parties received the pills, and it was stipulated at trial that they were Viagra. The name "H. Levine, M.D." was typed on the pill bottles, and the website ConfiMed.com was printed at the top of the labels. Investigations revealed that Dr. Levine was not licensed to practice medicine in Kansas, nor was ConfiMed.com licensed to practice pharmacy in Kansas.

The parties were billed in accordance with the charges they had agreed upon for the pills, postage, and consultation.

The Kansas Attorney General on behalf of the State of Kansas and the Kansas Board of Pharmacy sued ConfiMed.com and Dr. Levine, contending he committed unconscionable acts under K.S.A. 2000 Supp. 50-627 and prescribed prescription medication without a physical exam or consultation and without explanation of the side effects. The State argued the entire transaction was unconscionable. Damages, attorney fees, investigative fees, civil penalties under K.S.A. 50-636(a), and a permanent injunction against further violations of the Kansas Pharmacy Act, K.S.A. 65-1626 *et seq.*, were requested. The Board of Pharmacy was subsequently dismissed as a party in that its claims were solely made against

ConfiMed.com, which was found to have been dissolved and no longer in existence.

The trial court did not find the acts of Dr. Levine to be unconscionable under the KCPA, but it did enjoin him from dispensing medication or practicing medicine in Kansas. The court held as follows:

"Plaintiff contends Defendant Levine, a doctor licensed only in the State of Washington, prescribed and sold Viagra to two undercover investigators for the Kansas Attorney General: one a woman and one a 16-year-old boy, all without a physical examination or other personal contact. These transactions are claimed to have occurred over the Internet. The transactions included misrepresentations *by the investigators* and contained waivers whereby the investigators indicated they had read manufacturer's information about the drug, understood its contraindications and assumed all risk of use.

. . . .

"Notwithstanding, however, the Court is not satisfied these facts describe an 'unconscionable act' as defined by K.S.A. 50-627, the claim made by the plaintiff. First, the conduct bears no resemblance to the statutory examples of such behavior and further, there was no actual harm done to anyone. Nothing was misrepresented. All drugs furnished were authentic. The pharmacy expert testified that if the waivers in the orders signed by the investigators were true, more would have been understood by them than 'regular' doctors and druggists typically advise their patients or customers.

"This does not describe a deceptive, fraudulent or unconscionable consumer practice."

Our consideration of the question of whether actions are unconscionable under the KCPA is a legal question for the court, *Waggener v. Seever Systems, Inc.*, 233 Kan. 517, 521-22, 664 P.2d 813 (1983), under which our review is unlimited. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

We first look to the provisions of K.S.A. 2000 Supp. 50-627 which the State contends the trial court erroneously applied when it limited its analysis to the statutory examples of unconscionability. K.S.A. 2000 Supp. 50-627 and the statutory examples are as follows:

"(a) No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction.

"(b) The unconscionability of an act or practice is a question for the court. In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following that:

(1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;

(2) when the consumer transaction was entered into, the price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by similar consumers;

(3) the consumer was unable to receive a material benefit from the subject of the transaction;

(4) when the consumer transaction was entered into, there was no reasonable probability of payment of the obligation in full by the consumer;

(5) the transaction the supplier induced the consumer to enter into was excessively onesided in favor of the supplier;

(6) the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment; and

(7) except as provided by K.S.A. 50-639, and amendments thereto, the supplier excluded, modified or otherwise attempted to limit either the implied warranties of merchantability and fitness for a particular purpose or any remedy provided by law for a breach of those warranties."

"Kansas Comment, 1973

"1. Section 50-627 forbids unconscionable advertising techniques, unconscionable contract terms, and unconscionable debt collection practices. As under the UCC (K.S.A. 84-2-302), unconscionability typically involves conduct by which a supplier seeks to induce or to require a consumer to assume risks which materially exceed the benefits to him of a related consumer transaction. It involves overreaching, not necessarily deception. The Old Buyer Protection Act had no such provision. 'Knowledge or reason to know' often will be established by a supplier's course of conduct.

"2. Subsection (b)(1) includes such conduct as selling an English-language encyclopedia set for personal use to a Spanish-American bachelor laborer who does not read English, or using legal verbiage in a manner which cannot be readily comprehended by a low-income consumer who both reads and speaks English.

"Subsection (b)(2) includes such conduct as a home solicitation sale of a set of cookware to a housewife for $375 in an area where a set of comparable quality is readily available to such a housewife for $125 or less.

"Subsection (b)(3) includes such conduct as the sale of two expensive vacuum cleaners to two poor families whom the salesman knows, or has reason to know, share the same apartment and the same rug.

"Subsection (b)(4) includes such conduct as the sale of goods, services, or intangibles to a low-income consumer whom the salesman knows, or has reason to know, does not have sufficient income to make the stipulated payments.

"Subsection (b)(5) includes such conduct as requiring a consumer to sign a one-sided adhesion contract which is loaded too heavily in favor of the supplier, even though some or all of the contract terms are lawful in and of themselves.

"Subsection (b)(6) applies to misleading subjective expressions of opinion on which a supplier should reasonably expect a consumer to rely to his detriment. For example, a violation of this subsection would occur if a prospective purchaser asked a supplier what the useful life of a paint job was and the supplier, with reason to know that repainting would be necessary within two years, responded, 'in my opinion the paint will wear like iron.' Overt factual misstatements expressed in form of opinion are dealt with by 50-626's proscription of deceptive consumer sales practices. For example, a violation of 50-626 would occur if a prospective purchaser asked a supplier what the useful life of a two-year paint job was and the supplier responded, 'in my opinion repainting will not be necessary for five years.' "

The State's first argument is premised on the direction of K.S.A. 50-623 of the KCPA which requires its provisions to be "construed liberally to . . . protect consumers from suppliers who commit deceptive and unconscionable practices." The State contends that the trial court's ruling involved a "strict" construction of the KCPA, which was improper, as was the trial court's analysis that centered on the examples the legislature provided in the Kansas Comment to K.S.A. 2000 Supp. 50-627(b).

Dr. Levine more convincingly argues that the trial court's ruling, while stating that it could find no logical connection between the examples established by the legislature and the actions in issue, also looked to other hallmarks of unconscionable conduct such as whether there was harm to a consumer, whether any misrepresentation occurred, or whether there was a failure to provide authentic goods.

The State is mistaken that the trial court's ruling was limited to the statutory examples. Although the court wrote: "First, the conduct bears no resemblance to the statutory examples of such behavior," it went on to note: "[T]here was no actual harm done to anyone." In viewing the transaction, the trial court held that "[n]othing was misrepresented" and "[a]ll drugs furnished were authentic."

The trial court specifically noted that if the waivers signed were true, more information would have been known and understood by the purchasers than is typically provided to Kansas patients. The court did not limit its construction to the statutory examples.

The wording of K.S.A. 2000 Supp. 50-627(b) sets the tone for consideration of whether an action is unconscionable when it states: "[T]he court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following." It is clear the legislature intended the original subsections of (b)(1) through (b)(6) to be a guide in determining what kind of conduct should be found unconscionable without expressly limiting the court to the statutory examples. See L. 1973, ch. 217, § 5; see also *Willman v. Ewen*, 6 Kan. App. 2d 321, 324, 627 P.2d 1190, 1192 (1981), *aff'd* 230 Kan. 262, 634 P.2d 1061 (1981) ("[The KCPA] sets forth certain things for a court to consider, but states they are not the exclusive tests by which a court should determine unconscionability.").

It should be noted that certain other statutes such as K.S.A. 50-644 (flammable thermal insulation), K.S.A. 2000 Supp. 50-670 (unsolicited telemarketing calls), K.S.A. 50-669 (check identification), K.S.A. 50-669a (credit card sales), K.S.A. 50-692 (prize notification), and K.S.A. 17-1769 (charitable solicitations) specifically make certain conduct unconscionable. The State points to these provisions as showing unconscionability is a broad, sweeping concept that cannot be limited to contract formation issues. Dr. Levine counters that by making specific conduct unconscionable, the legislature implicitly did not intend K.S.A. 2000 Supp. 50-627 to have a broad scope. We do not adopt either argument as being definitive. The legislature has obviously desired for certain conduct to be considered unconscionable per se, but this should in no way contract or expand the right of courts to find (or fail to find) other conduct unconscionable.

In *State ex rel. Miller v. Midwest Serv. Bur. of Topeka, Inc.*, 229 Kan. 322, 324, 623 P.2d 1343 (1981), this court cited the comment to K.S.A. 50-627 (Weeks) in noting the three general categories of conduct proscribed: "[T]hat section forbids 'unconscionable advertising techniques, unconscionable contract terms, and uncon-

scionable debt collection practices.' " Limitation of implied warranties, added as an example to the statute after the *Midwest* decision, would be a fourth category. See L. 1983, ch. 180, § 1.

Although unconscionable contract terms were somewhat expanded by the decision of *Willman v. Ewen*, 230 Kan. 262, 266, 634 P.2d 1061 (1981), in which the contract itself was found to be valid but the subsequent deceptive conduct tainted the transaction as unconscionable, this court has held to general guidelines in determining unconscionability. After reviewing several cases, we concluded: "The cases seem to support the view that there must be some element of deceptive bargaining conduct present as well as unequal bargaining power to render the contract between the parties unconscionable." *Willman*, 230 Kan. at 266. Further support is the comment to K.S.A. 50-627 which references unconscionability in the context of the UCC, clearly a contractual-based form of the doctrine: "As under the UCC (K.S.A. 84-2-302), unconscionability typically involves conduct by which a supplier seeks to induce or to require a consumer to assume risks which materially exceed the benefits to him of a related consumer transaction." See also *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 758-59, 549 P.2d 903 (1976) (lists 10 factors that aid in applying the doctrine of unconscionability but in situations involving the Uniform Commercial Code).

We hold that the trial court did consider potential unconscionable acts outside of the enumerated examples of K.S.A. 2000 Supp. 50-627(b), and the State's argument to the contrary must fail.

Before considering the State's final arguments that three different specific acts of Dr. Levine must be considered to be unconscionable, we briefly mention that there remains unanswered a question of whether the agents were "consumers" as defined under the KCPA. K.S.A. 50-624(b) states: " 'Consumer' means an individual or sole proprietor who seeks or acquires property or services for personal, family, household, business or agricultural purposes." This is not a question we reach, as the trial court centered its decision on the question of whether unconscionable conduct existed.

The State contends that charging $75 for an online consultation service, prescribing medication without a physical examination or advisement of the dangers of the medicine, and prescribing Viagra to a minor without consulting the parents or guardian constitute individually or collectively unconscionable practices under K.S.A. 2000 Supp. 50-627.

While we do not retreat from what we have previously said concerning our standard of review as being unlimited, we also note that in *Remco Enterprises, Inc. v. Houston*, 9 Kan. App. 2d 296, Syl. ¶ 3, 677 P.2d 567, *rev. denied* 235 Kan. 1042 (1984), the court said: "Generally speaking, the unconscionability of acts under the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.*, and amendments thereto is left to the sound discretion of the trial court to be determined under the peculiar circumstances of each case."

The *Remco* opinion also quoted from *Meyer v. Diesel Equipment Co., Inc.*, 1 Kan. App. 2d 574, 570 P.2d 1374 (1977), where the trial court's finding that the KCPA was inapplicable was reversed but the appellate court upheld the trial court's determination that unconscionability did not exist with the following statement:

"'The trial court concluded that defendant's conduct was not unconscionable. We are not of a mind to now hold that defendant's complained-of conduct was unconscionable as a matter of law. With a concept so nebulous as "unconscionability" involved, it is necessary that a certain amount of leeway be granted trial courts when deciding the unconscionability of acts. Our legislature recognized this and, accordingly, left the unconscionability question to be decided by the court under the peculiar circumstances of each case.'" *Remco*, 9 Kan. App. 2d at 303.

In addition, a review of 50-627 shows that the determination of unconscionability involves not only a review of the written documents but also consideration of the witness testimony as to actions surrounding the transaction. We have long held that the credibility of witnesses will not be reweighed on appeal. *State v. Chaney*, 269 Kan. 10, 20, 5 P.3d 492 (2000).

The State's contention that the agreed-upon $75 for an online consultation is unconscionable because the applicants did not receive a material benefit (See K.S.A. 2000 Supp. 50-627[b][3]) lacks merit. The record reflects the applicants failed to give substantive information in blank areas and provided false answers to others.

The declaration of Dr. Levine stated the applications were reviewed for any contradictions and, if noted, the prospective purchaser would be rejected. In fact, Agent Crawford's application truthfully stating that she was a female was rejected.

Nelson and Crawford at best made a bad bargain, but, lacking any indication of deceptive bargaining conduct or unequal bargaining power, the $75 charge for the consultation was not unconscionable. See *Willman*, 230 Kan. at 266; see also *Gonzales v. Associates Financial Serv. Co. of Kansas*, 266 Kan. 141, 166, 967 P.2d 312 (1998)("Transactions that merely appear unfair, or in retrospect are bad bargains, do not state a claim under the KCPA.")(citing *Remco Enterprises, Inc. v. Houston*, 9 Kan. App. 2d 296, 300-03, 677 P.2d 567, *rev. denied* 235 Kan. 1042 [1984]).

The State next argues that prescribing Viagra without a physical examination and the actual physical supervision of the patient is unconscionable. The State relies on 21 U.S.C. 353(b)(1) (1994) and the testimony of its pharmaceutical expert to conclude that Dr. Levine's actions do not comply with established standards of conduct.

The State makes no effort to analogize these facts with any of the examples of unconscionable conduct in 50-627(b). This conduct falls short of this court's pronouncement in *Willman* that "there must be some element of deceptive bargaining conduct present as well as unequal bargaining power to render the contract between the parties unconscionable." 230 Kan. at 266. Also, "[w]here a record is 'devoid of any evidence of any deceptive or oppressive practices, overreaching, intentional misstatements, or concealment of facts,' there is no claim under the KCPA. [*Remco Enterprises, Inc.*] 9 Kan. App.2d at 303." *Gonzalez*, 266 Kan. at 166-67.

As the trial court pointed out, Nelson and Crawford paid for Viagra and received Viagra. Further, they falsified their applications by affirmatively stating that they had read the information available about Viagra from the manufacturer and that they understood the potential side effects. At best, the State argues that the conduct is "hazardous to consumers."

However, in this case, both purchasers did not intend to use the drugs nor did they use the drugs. The lack of a physical examination posed no threat to either of them. They falsified information in order to procure the pharmaceutical. Finally, the State's pharmacist testified that had the purchasers in fact read the manufacturer information about Viagra, they would know more information than he provides his own customers. He also admitted that the questions asked on the computerized consultation form were more in depth than those he poses to individuals who have been prescribed Viagra. When considering the entire transaction, the facts are insufficient to fall within the purview of K.S.A. 2000 Supp. 50-627.

Finally, the State argues that Nelson's minority makes this transaction unconscionable. Although Dr. Levine did admit that the prescription should not have been allowed to be dispensed to a minor and this clearly violates a medical standard of conduct, this does not make it unconscionable under K.S.A. 2000 Supp. 50-627.

It must be noted that the evidence presented to the trial court showed that the minor's parent was present and involved in every step of the transaction. The State failed to present any evidence that Dr. Levine deceived, oppressed, or misused superior bargaining power in supplying or prescribing Viagra to Nelson. Nelson was not overcharged, and the testimony clearly showed that he would never have been allowed to use the medication because of the supervision of his mother. The doctor was enjoined from further practice in Kansas. The trial court said, "I don't have any trouble with saying . . . these people ought to be de-frocked as medical practitioners, as pharmaceutical practitioners. . . . But, I'm trying to figure out how this is a consumer fraud case." Ultimately, after examining all of the documents and hearing all of the witnesses, the trial court properly held Dr. Levine's actions did not involve advertising techniques, contract terms, debt obligation, limitation of warranties, or the type of conduct intended to be considered unconscionable under K.S.A. 2000 Supp. 50-627 of the KCPA.

The public is adequately protected by the injunction that was issued, and the trial court's refusal to expand the scope of the KCPA under the facts of this case is affirmed.

DAVIS, J., not participating.

BRAZIL, Chief Judge Retired, assigned.