(856 P.2d 163)

No. 68,264

STATE OF KANSAS, *Appellee*, v. TOMMY O. WAINWRIGHT, *Appellant.*

Opinion filed June 25, 1993.

*Doug Adams*, legal intern, *Thomas Jacquinot*, special appellate defender, of Lawrence, and *Jessica R. Kunen*, chief appellate defender, of Topeka, for appellant.

*Kevin C. Fletcher* and *Keith E. Schroeder*, assistant county attorneys, and *Robert T. Stephan*, attorney general, for appellee.

Before GERNON, P.J., PIERRON, J., AND PAUL E. MILLER, District Judge, assigned.

MILLER, J.: Tommy O. Wainwright, a resident of South Carolina who had never been to Kansas prior to the evening in

question, appeals his convictions of possession of marijuana and possession of marijuana without a tax stamp and, further, appeals the trial court's order denying his motion for a new trial. Wainwright claims: (1) The trial court abused its discretion in admitting bloodhound tracking evidence; (2) the trial court erred in failing to grant a new trial based on jury misconduct; (3) the trial court abused its discretion in denying his request for funds to hire a bloodhound expert; and (4) the prosecutor was guilty of misconduct which denied Wainwright a fair trial.

We find no merit in any of Wainwright's issues and affirm.

During the late evening of September 23, 1991, a local farmer reported to the Reno County sheriff's office that he had seen a person wearing light-colored blue jeans and either orange socks or orange sneakers lying by the side of the road in a rural area of the county. Upon arrival at the scene, Reno County deputies found no such person, but they did find 18 plastic trash bags full of freshly cut marijuana. They also found a smaller white trash bag containing marijuana, and an empty trash bag. One of the officers called for backup support and contacted the Kansas Department of Corrections with a request that it send an officer with a tracking dog to the scene.

Shortly thereafter, Wainwright, wearing dark blue jeans and black boots, approached the officers. He explained that he was hitchhiking to Oklahoma and had been asleep in the woods not far away when he heard the commotion and decided to inquire into its source. Upon seeing Wainwright approach, the officers ordered him to stop, raise his hands, and turn around. The officers noticed a large knife tucked into the back of his pants and proceeded to do a thorough pat-down search. Four additional knives, a set of fingerscales or carburetor scales, cigarette rolling papers, and trash bag twist ties were found as a result of the pat-down.

The sheriff's deputies questioned Wainwright about his presence in the area. They became suspicious of his story that he was hitchhiking from South Carolina to Oklahoma to see an old friend because of his location in the rural area and because he had no bedding, backpack, or luggage. Additionally, he had no tobacco to go with the cigarette rolling papers.

Wainwright advised the deputies that he had walked through the area where the marijuana was found earlier in the day before

taking a nap in the woods on down the road. He showed the officers where he was napping.

Thereafter, Sergeant Kagy of the Department of Corrections arrived on the scene with his bloodhound, Rufus. Wainwright was not pointed out to Sergeant Kagy, nor was Sergeant Kagy advised a suspect was in custody. Sergeant Kagy took Rufus to an area near the marijuana and, upon being given the command to scent, Rufus indulged in behavior consistent with picking up a scent. Rufus led Sergeant Kagy to the area where Wainwright had been napping, through some bushes and over a fence at the same place Wainwright said he had crossed, and then back down the road toward the patrol cars. When he approached Wainwright, Rufus howled, raised his tail up over his back, and wagged it vigorously. Rufus also tried to nudge Wainwright. Based on the actions of the dog, Wainwright was charged with possession of marijuana with intent to sell or in the alternative to distribute and with possession without a tax stamp.

With regard to Wainwright's first complaint, no Kansas court has stated the standard for reviewing a trial court's decision to allow bloodhound tracking evidence. Because of its questionable nature and the process for admitting this evidence, we believe this type of evidence is akin to expert opinion. Admissibility of this type of evidence falls within the sound discretion of the trial court. *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, 628, 822 P.2d 591 (1991). We hold that the standard should be whether no reasonable person would agree with the trial court's decision to allow the evidence.

Here, the trial court placed limitations on Sergeant Kagy's testimony. The trial court allowed testimony about the dog's training and Sergeant Kagy's qualifications. Without detailing the testimony, it is sufficient to say that Sergeant Kagy's qualifications were impressive and that the dog's training was extensive.

The trial court further allowed Sergeant Kagy to describe the dog's actions on the evening in question but refused to allow him to opine where Rufus had picked up the scent. And, though the trial court allowed bloodhound evidence to show Wainwright was in the area and could have committed the crime, the evidence was not allowed to be used as direct proof of guilt and not, certainly, as the sole proof of guilt.

Kansas has long allowed bloodhound evidence, even though it has recognized the unfavorable aspects of this evidence. In *State v. Adams*, 85 Kan. 435, Syl. ¶ 3, 116 Pac. 608 (1911), it was held:

"Before evidence of the conduct of bloodhounds alleged to have been put upon the trail of the defendant can properly be received it should appear that the dogs in question were able, at the time and under the circumstances, to follow the scent or track of a person. When such foundation has been laid and the evidence showing the conduct of the dogs has been received, a charge in substance that before the jury can consider such conduct [it] must find that the dogs in question were accurate, certain and reliable in following the trail of human footsteps, and if [it finds] from the evidence touching the matter that they were and are reliable and accurate in this regard then the evidence of their work and its result may be considered, together with all the other evidence in the case, as a circumstance determining the guilt of the defendant, is not prejudicially erroneous as to such defendant."

In *State v. Fixley*, 118 Kan. 1, Syl. ¶¶ 1, 2, 233 Pac. 796 (1925), we find the following:

"Testimony of the trailing of bloodhounds of one charged with crime may be used in evidence in corroboration of other evidence or as a circumstance tending to show the presence of the accused at the location of the crime, where it is shown by one having knowledge that the dogs were trained and tested in tracking human beings and by previous experiences had been found to be accurate and reliable."

"Testimony of this kind without other substantial evidence connecting the defendant with the crime charged is insufficient to sustain a conviction . . . ."

In *State v. Netherton*, 133 Kan. 685, 690-91, 3 P.2d 495 (1931), it is stated:

"[B]efore the testimony of the trailing of bloodhounds of one charged with a crime may be used in evidence it must be shown that the bloodhounds were laid on a trail at a point where the circumstances tend clearly to show that the guilty party had been or on a track which the circumstances indicate to have been made by him."

Though the trial court tried to limit the testimony of where the bloodhound picked up the scent, two officers testified that the dog picked up the scent near the empty trash bags. Here, there was sufficient foundation laid to show both the training and reliability of the dog and the trainer to allow the admission of the bloodhound evidence. No abuse of discretion is shown.

Wainwright next complains of alleged jury misconduct and the trial court's failure to grant a new trial based thereon.

Appellate review of an order denying a new trial is limited to whether the trial court abused its discretion. *Taylor v. State*, 251 Kan. 272, 277, 834 P.2d 1325 (1992). Whenever juror misconduct is alleged, the party alleging prejudice has the burden of proof. A threshold question must be answered as to whether juror testimony may be received. Normally, if the evidence concerns the mental processes of the jury, it will not be allowed. It may be allowed if it will demonstrate that the jury intentionally disregarded the court's instructions. *Johnson v. Haupt*, 5 Kan. App. 2d 682, 685, 623 P.2d 537 (1981).

Here, the trial court instructed the jury in part: "You are instructed that such evidence cannot be considered by you as proof of guilt . . .; it may only be considered by you as some evidence that the Defendant was at the place where the crime was committed, and therefore, that he could have committed it." This instruction is erroneous, but the error operated in Wainwright's favor. The instruction should have read that "such evidence cannot be considered by you as the *sole* proof of guilt."

Wainwright offered two affidavits which stated that one or two jurors discussed the scent being taken off the plastic bags and followed to Wainwright, so Wainwright must have had possession and was, therefore, guilty. The affidavits do not suggest the jury as a whole conspired to disregard the instruction on bloodhound evidence, nor do they indicate the jury used the bloodhound evidence as the sole proof of guilt. The verdict is not so contrary to the evidence that it suggests a conspiracy to disregard the instruction. Because there is no suggestion of a conscious conspiracy on the part of the jury, we find no abuse of discretion in the court's refusing to delve into the mental processes of the jury and no error in denying the motion for new trial.

Wainwright complains that the trial court refused to grant him funds to hire an expert witness on bloodhounds. Such a decision is a discretionary matter with the court and will not be overturned unless the court abused its discretion. A trial court's decision denying authorization for expert services will not be disturbed on appeal absent a showing of prejudice to an appellant's sub-

stantial rights. *State v. Owens*, 248 Kan. 273, 282, 807 P.2d 101 (1991).

Bloodhound evidence is indeed unique and novel, and, clearly, a bloodhound expert might well have helped Wainwright's case. Here, however, Wainwright waited until just a matter of days before trial to request the expert witness, after knowing of the availability of the bloodhound testimony for several months. Bloodhound evidence was presented at the preliminary hearing two and one-half months prior to trial. Counsel for Wainwright had the opportunity to cross-examine the bloodhound's handler at this hearing. In denying Wainwright's request, the trial court noted the opportunity to cross-examine and, further, noted that Wainwright made no showing that an expert's services were necessary in order to prepare for trial. Wainwright did not offer a specific expert whom he had selected.

Wainwright points to *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985), and the three-part balancing test for the denial of expert services found therein. The Kansas Supreme Court has considered *Ake* and has held that, before any balancing test is employed, a defendant must first clearly show that the proposed expert testimony will relate to a material issue raised in the defense. See *State v. Owens*, 248 Kan. at 282; *State v. Dunn*, 243 Kan. 414, 419-20, 758 P.2d 718 (1988).

We believe Wainwright has failed to meet the threshold showing required. In his brief, Wainwright suggests certain questions which could have been put to an expert, yet he fails to show why the questions he raises could not have been raised in cross-examination of Sergeant Kagy. Wainwright had ample opportunity to prepare to cross-examine Sergeant Kagy. Wainwright failed to show that a bloodhound expert existed at the time of his request. Given these factors, we find no abuse of discretion by the trial court.

Last, Wainwright claims that prosecutorial misconduct during closing argument denied him a fair trial. The prosecutor in argument made the following remark: "[S]end a message to Tommy Otis Wainwright. Send a message that you can't come into this State, make money, profit off the misery and addiction of others. I ask you to find him guilty."

It should be noted that no objection was made to these comments at trial, nor did Wainwright raise the issue in his motion for new trial. Ordinarily, "reversible error cannot be predicated upon a complaint of misconduct of counsel during closing argument where no contemporaneous objection is lodged." *State v. Baker*, 249 Kan. 431, 446, 819 P.2d 1173 (1991).

Since the time the briefs were filed in this case and just prior to argument, the Kansas Supreme Court filed its opinion in *State v. Ruff*, 252 Kan. 625, 847 P.2d 1258 (1993), a case in which a similar complaint was made. There, the following is found:

" '[MR. HOFFMAN]: Ladies and gentlemen of the jury, do not allow this conduct to be tolerated in our county.
MR. SACHSE [defense counsel]: Judge, I'm objecting. That is absolutely improper argument and I'm pretty sure that the prosecutor's well aware of that.
THE COURT: Let's wind it up.
MR. HOFFMAN: Thank you. Send that message, ladies and gentlemen, come back with a verdict of guilty. Thank you.' " 252 Kan. at 631.

Because of the similarity of the complained-of portions of the argument, we pause to consider whether we can find beyond a reasonable doubt that the complained-of language was not so prejudicial as to deprive Wainwright of a fair trial.

It would only prolong this opinion to set forth in any detail Justice Lockett's analysis in *Ruff* of a prosecutor's duties, and those of the trial judge as they relate to proper closing argument. Suffice it to say the opinion stands for the premise that a prosecutor should not inject anything into his argument which is not firmly based on the evidence. The trial judge has a duty to interrupt counsel on his or her own motion and correct counsel when that judge hears improper argument. *Ruff*, 252 Kan. at 635.

Clearly, the comment of the prosecutor in this case was improper. It appealed to the jury to go beyond a mere finding of guilt or innocence. The question remains, however, whether the comment denied Wainwright a fair trial. We think not.

"For such remarks to be harmless error, the reviewing court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such a belief beyond a reasonable doubt." *State v.*

*Abu-Isba*, 235 Kan. 851, 859, 685 P.2d 856 (1984). See *State v. Johnson*, 231 Kan. 151, 159, 643 P.2d 146 (1982).

Here, the "message" to be sent was to Wainwright as opposed to the community, as in *Ruff*. There was ample evidence of Wainwright's guilt, and it appears that the jury was not prejudiced against Wainwright because he was found guilty of the lesser included offense of simple possession of marijuana.

We hold the complained-of comments to be harmless error.

Affirmed.