Nos. 125,721
126,184

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ALENCO, INC.,
*Appellee*,

v.

WILLIAM WARRINGTON and TRINA LeMASTER,
*Appellants*.

SYLLABUS BY THE COURT

1.

Not every breach of an agreement justifies rescinding the entire contract. When a person fails to precisely meet every contract term, their performance may still be considered complete if the essential purpose of the contract is accomplished and they have made a good-faith attempt to comply with the terms of the agreement.

2.

Substantial performance of a contractual obligation is performance that, despite deviation or omission, provides the important and essential benefits of the contract.

3.

A material breach of contract is so substantial as to defeat the object of the parties in making the agreement. When a party materially breaches a contract, they are precluded from enforcing the contract against the nonbreaching party until the material breach has been cured.

4.

When a contractor has substantially performed their obligations under a construction contract, they are entitled to be paid the contract price, less damages for any minor deficiencies.

5.

Whether a party has substantially performed their contractual obligations or has materially breached the agreement is a factual determination resolved by the jury. Only when all the relevant facts are undisputed does this inquiry become a legal decision for the court.

6.

The Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 et seq., was enacted to discourage suppliers from engaging in deceptive or unconscionable acts or practices when doing business with consumers.

7.

Whether a supplier has engaged in deceptive practices penalized by the KCPA is a factual question for the jury. A supplier engages in deceptive acts or practices when it makes false or misleading statements or insinuations to consumers that it knew or should have known were untrue. The KCPA penalizes deceptive acts or practices in consumer transactions, regardless of whether the targeted consumer was ever actually misled.

8.

Whether a supplier engaged in unconscionable practices penalized by the KCPA is a mixed question of law and fact to be resolved by a court. Unconscionable practices typically involve conduct by which a supplier seeks to induce or to require a consumer to assume risks which materially exceed the benefits of a related consumer transaction.

9.

A party seeking to impeach a verdict based on juror misconduct must demonstrate both that misconduct occurred and that the misconduct substantially prejudiced that party's right to a fair trial.

10.

An appellant has the burden to designate a record that affirmatively establishes the claimed error. Without such a record, an appellate court presumes the action of the district court was proper.

Appeal from Johnson District Court; JAMES F. VANO, judge. Oral arguments held May 21, 2024. Opinion filed October 25, 2024. Affirmed in part, reversed in part, vacated in part, and remanded with directions.

*Stanley B. Bachman* and *Sue L. Becker*, of Morefield Speicher Bachman, LC, of Overland Park, for appellants.

*Michelle M. Suter*, of Commercial Law Group, P.A., of Leawood, for appellee.

Before PICKERING, P.J., MALONE and WARNER, JJ.

WARNER, J.: This consolidated appeal arises from a contract for exterior renovation work between Alenco, Inc., and the owners of a home in Olathe. Alenco sued the homeowners for breach of contract after they refused to pay $27,000 due under the contract, claiming the siding Alenco installed on their home had a lesser insulation rating than the contract called for. After a trial, the jury found for Alenco, concluding that the homeowners had breached the contract by not satisfying their bill. The jury rejected the homeowners' claims that Alenco had violated the Kansas Consumer Protection Act (KCPA) and that it breached the contract first by providing the wrong siding.

The homeowners requested a new trial, asserting that the jury's verdict on their KCPA counterclaim was against the weight of the evidence. The district court disagreed and denied the motion. But the court then essentially reweighed the evidence and, despite the jury's earlier assessments, found that Alenco had made several misrepresentations during the course of the transaction in violation of the KCPA. The court imposed a $10,000 civil penalty against Alenco and ordered the company to pay $40,000 of the homeowners' attorney fees.

The homeowners and Alenco each challenge aspects of that trial and the district court's posttrial rulings. After carefully reviewing the record and the parties' arguments, we find that the district court erred by effectively substituting its factual findings for the jury verdict on the KCPA claim. We also vacate the attorney-fees award that was based on that same finding, but we affirm the district court's discovery sanction for certain pretrial conduct. We thus affirm in part, reverse in part, vacate in part, and remand for entry of judgment in Alenco's favor on the consumer-protection claim.

FACTUAL AND PROCEDURAL BACKGROUND

Trina LeMaster and Bill Warrington own a home in Olathe. Alenco is a Kansas corporation that supplies and installs home improvement products. In 2019, LeMaster and Warrington (the homeowners) hired Alenco to perform construction work on their home, including installing new siding.

Before hiring Alenco, the homeowners met with one of Alenco's sales representatives. The representative inspected the homeowners' existing siding and identified it as hollow vinyl. After discussing Alenco's products and services and the work the homeowners sought, the representative prepared a proposal for the work. The homeowners later went to Alenco's showroom to view siding options and chose a siding

4

product called "Cedar Ridge," manufactured by Westlake Royal Building Products. Alenco purchases this siding product through a distributer.

The homeowners entered into a contract with Alenco to replace their siding and perform other construction work, including installing custom shutters and new guttering. This contract included several handwritten specifications about various aspects of the work to be completed and the products to be used. For example, the contract stated Alenco would install a siding product with "R-value 4" insulation—that is, siding with a particular thickness of pre-attached insulation. The contract also stated that Alenco would use "Cedar Ridge" solid core siding, type "Triple 6" with a "horizontal" style in a "slate" color. The total cost of the job was $30,000. The homeowners made a $3,000 downpayment upon execution of the contract, and construction began a few months later.

*The parties' disagreement over the siding product and insulation rating*

When the project was nearly complete, the homeowners were observing the worksite and noticed a few pieces of scrap siding. They thought these pieces of siding looked different from the siding they previewed at the showroom; the box in their yard contained siding labeled as "CraneBoard 6" with an R-value of 2.2. The homeowners contacted an Alenco representative and told him that they believed the wrong siding was being installed on their home. In the meantime, Alenco placed an invoice on the homeowners' door for $27,000 due under the contract. The homeowners refused to pay.

The homeowners and Alenco exchanged texts, phone calls, and emails about the siding that had been installed. The homeowners also had several meetings with representatives of Alenco, including the company's vice president and sales manager, as well as its retired president, who was called in to help resolve the dispute.

5

In these meetings, the Alenco representatives explained that the confusion about the siding stemmed from a problem with the marketing materials it received from the manufacturer and from a change in the way the R-value was rated for energy-saving tax credits. They indicated that the product that had been installed on the homeowners' property was the same in all essential details as the product the homeowners had chosen and that the siding on the home had the highest R-value available for siding product the homeowners had requested. The representatives noted that Cedar Ridge is a "white label" brand for a siding called CraneBoard, meaning the Cedar Ridge siding the homeowners selected is also labeled and marketed as CraneBoard.

Alenco proposed a few possible solutions to remedy the disagreement. For example, Alenco offered to temporarily remove the siding and add insulation to achieve the equivalent of the R-value 4 rating for no additional cost. Alternatively, it offered to discount the price of the work by $2,000—the amount that the homeowners would be expected to save in energy costs over 20 years with R-value 4 siding. The homeowners rejected both these offers, however, and informed Alenco that they did not intend to pay for the siding or the other work beyond the $3,000 downpayment since they had not received the product listed in the contract.

*The lawsuit and eventual jury verdict in favor of Alenco*

When the parties could not resolve their disagreement after several months, Alenco filed this lawsuit, alleging the homeowners owed it $27,000 under the contract, plus court costs and attorney fees. The homeowners counterclaimed, asserting that Alenco breached the contract first when it installed the wrong siding. The homeowners also alleged that Alenco had engaged in deceptive and unconscionable acts in violation of the KCPA.

Most of the parties' claims and counterclaims were tried to a jury over the course of a four-day trial. The jury thus heard evidence relating to each party's assertions about who breached the contract and when they had allegedly done so, as well as the homeowners' claim that Alenco had violated the KCPA by engaging in several deceptive practices. (The homeowners' final counterclaim—that Alenco violated the KCPA by engaging in unconscionable consumer practices—was not presented at trial because whether a practice is unconscionable is a legal question to be determined by the court, not a factual question to be resolved by the jury. See K.S.A. 50-627[b].) The homeowners and several representatives from Alenco testified about the parties' contract, the nature of the siding industry, and the cause of the parties' disagreement, as well as their negotiations to resolve that disagreement.

After hearing all the evidence, the jury found that the homeowners had breached their contract with Alenco by refusing to pay the invoice. It awarded Alenco $25,000 in damages—essentially the offer Alenco had previously presented with $2,000 deducted from the remaining amount due under the contract. The jury also found that Alenco had neither materially breached the contract nor engaged in any deceptive acts proscribed by the KCPA.

*The crux of this appeal—the district court's posttrial rulings*

After trial, the homeowners filed several motions with the district court. Three of these requests make up the heart of this appeal. The homeowners requested either judgment as a matter of law or a new trial, claiming the jury's verdict was against the great weight of the evidence and thus could not be upheld. They also asked the district court to rule in their favor on their remaining counterclaim—that Alenco should be subject to civil penalties under the KCPA because it had engaged in unconscionable consumer practices.

The district court held a hearing on the homeowners' posttrial motions. It later denied their request for judgment as a matter of law and for a new trial, finding there was evidence submitted at trial to support the jury's verdict.

The court then turned to the homeowners' remaining KCPA claim based on unconscionability. While the court found that the homeowners were not protected or particularly vulnerable persons under the KCPA—typically a finding necessary to prove unconscionability—the court nevertheless found Alenco had engaged in an unconscionable practice. The court explained that even though the jury had found Alenco had not engaged in deceptive practices and that finding was supported by evidence at trial, the court had reviewed the evidence and would make findings "independent of those of the jury." The court then found that Alenco had engaged in several deceptive actions during the siding transaction despite the jury rejecting each of these allegations at trial. The court concluded that, when taken together, these actions constituted one "multifaceted unconscionable practice" under the KCPA. The court then imposed a $10,000 civil penalty against Alenco.

In its written journal entry memorializing its decision, the district court acknowledged that its KCPA findings were in direct conflict with the jury's verdict. It explained, however, that this difference was simply a disagreement between the court's and jury's assessment of the facts:

> "It is unknown to the Court how or why the jury reached the verdict that it did on all of the KCPA deceptive acts claims submitted. It could be they were offended by something that was said in testimony or in argument. It could be they misunderstood the facts. They might have been offended that the Defendants kept and are using the siding. As we have known for some time, it has always been within the raw power of the jury to 'fly in the teeth of both fact and law.' [*State v. McClanahan*, 212 Kan. 208, 213, 510 P.2d 153 (1973).] That is part of the risk of trial to a jury and why the Court was not inclined to set aside its verdict. We have not been made aware of any corruption to impeach the

verdict. On the other hand, in trying the unconscionable practices counterclaim, the Court was making findings on its own based upon its hearing of the evidence unpersuaded, separate and independent from the jury. The verdict in this case is not against the great weight of the evidence. It is simply that the Court heard the case and resolved it differently."

In the same order, the court awarded the homeowners $40,000 in attorney fees for their successful KCPA counterclaim—less than a quarter of the $175,000 the homeowners had requested. And the court imposed a $2,500 discovery sanction against Alenco on an unresolved pretrial discovery matter. The court also found that Alenco was not entitled to attorney fees under the KCPA, although Alenco had not yet submitted a request for fees under the Act. The court did award 15% of the total judgment as attorney fees to Alenco under the contract, as well as prejudgment interest.

*The parties' consolidated appeals*

For reasons unimportant to our analysis, the homeowners and Alenco filed separate notices of appeal, docketed their respective appeals under separate appellate case numbers, and provided full briefing in each case. This court consolidated the separate appeals on our own motion before oral argument.

The parties' respective appeals raise several issues arising from the tension between the jury's verdict and the district court's posttrial rulings:

- Alenco asserts that the jury's verdict was supported by evidence at trial. It argues that, despite the district court's denial of the homeowners' motions for a new trial and judgment as a matter of law, the court's unconscionability ruling under the KCPA was truly a reweighing of the evidence as it related to the homeowners' deceptive-acts claim—a claim the jury found to be unsupported by the evidence.

9

- The homeowners assert that the district court's statements in its KCPA ruling demonstrate that it used an incorrect standard when assessing their other posttrial motions, as the court essentially stated that it did not understand the evidentiary basis for the jury's verdict. They assert that the court should have granted them judgment as a matter of law, or at least granted a new trial. They also argue that the district court erred when it found that Alenco had engaged in only one unconscionable practice under the KCPA since the court listed eight actions during the posttrial hearing that it found were deceptive.

The parties also raise other issues relating to attorney fees, the actions of a juror during deliberations, and the discovery sanction.

### DISCUSSION

The jury trial "is a central foundation of our justice system and democracy." *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 210, 137 S. Ct. 855, 197 L. Ed.2 d 107 (2017). Our courts entrust jurors with the responsibility to observe witnesses' demeanor and listen to their testimony to determine what versions of events are credible. And once jurors have been instructed on the law, we rely on them to weigh the evidence presented in the context of each party's arguments, make factual findings, and render a verdict. In this way, each jury is "a tangible implementation of the principle that the law comes from the people." 580 U.S. at 210.

Out of respect for the jury's solemn responsibility, Kansas law recognizes that a jury's verdict, when based on the correct law and supported by evidence, should not be set aside lightly. For this reason, courts tend to view posttrial motions like the two the homeowners filed here—a motion for a new trial under K.S.A. 60-259 and a motion for judgment as a matter of law under K.S.A. 60-250—with some degree of skepticism, as these motions seek to set aside the jury's assessment of the evidence.

10

A motion for judgment as a matter of law allows a district court to vacate findings and awards made by a jury after a full presentation of the evidence if there is not "a legally sufficient evidentiary basis to find for the party on that issue." K.S.A. 2023 Supp. 60-250(a)(1); see *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015). When presented with such a motion, the district court must "'resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied.'" *Wilkinson v. Shoney's, Inc*., 269 Kan. 194, 202, 4 P.3d 1149 (2000). Appellate courts apply this same standard on appeal. *National Bank of Andover v. Kansas Bankers Surety Co*., 290 Kan. 247, 267, 225 P.3d 707 (2010).

Motions for a new trial present a similar inquiry but offer a different remedy: a new trial of one or more of the questions decided by the jury, rather than a directed judgment. See K.S.A. 2023 Supp. 60-250(b) (recognizing that a new trial is an alternative remedy for a request for judgment as a matter of law). A district court has discretion to grant a new trial if some error in the proceedings called into question the fairness of the process or the soundness of the outcome. See K.S.A. 2023 Supp. 60-259(a) (listing potential bases for a new trial). Appellate courts will only set aside the decision to grant or deny such a motion when the district court has abused its discretion—that is, if the court acted in a way that no reasonable court would under the circumstances or based its decision on a factual or legal error. See *Wiles v. American Family Life Assurance Co*., 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Our review of the record shows that the district court appropriately denied the homeowners' posttrial motions because the jury's verdict was supported by evidence—albeit *disputed* evidence—at trial. The district court erred, however, when it then reweighed that evidence to reach a conclusion on the remaining KCPA claim that was

11

irreconcilable with the jury's findings. This ruling, and the accompanying attorney-fees award, must be reversed.

1. *The jury's findings regarding the parties' respective breach-of-contract claims were supported by evidence presented at the trial.*

The first disputed findings on appeal concern the jury's verdict as it related to the parties' contract. As we have noted, the jury found that the homeowners had breached the contract with Alenco and owed Alenco $25,000 in damages. The jury also found that Alenco had not materially breached its contract with the homeowners. The homeowners now assert that the jury's verdict cannot be reconciled with the undisputed fact that Alenco installed a siding with a lower R-value than the parties had agreed upon. The homeowners argue that they had no duty to pay for Alenco's work or for the products used because Alenco used different siding than what they had chosen. Our review shows that the jury's verdict is supported by evidence presented at trial. Thus, the district court did not err when it denied the homeowners' request to set aside the verdict.

Kansas law generally holds people responsible for the agreements they make. But not every breach of an agreement justifies rescinding the entire contract. *Whiteley v. O'Dell*, 219 Kan. 314, 316, 548 P.2d 798 (1976). When a person "fails to precisely meet" every contract term, their performance "may still be considered complete if the essential purpose of the contract is accomplished" and they have made "a good-faith attempt to comply with the terms of the agreement." *Dexter v. Brake*, 46 Kan. App. 2d 1020, 1033, 269 P.3d 846 (2012). The guiding question is whether a person has *substantially performed* their contractual obligations or whether they have *materially breached* the agreement in a way that eviscerates the purpose of the contract.

Substantial performance is "'performance which, despite deviation or omission, provides the important and essential benefits of the contract.'" *Almena State Bank v.*

*Enfield*, 24 Kan. App. 2d 834, 840, 954 P.2d 724 (1998) (quoting *Ujdur v. Thompson*, 126 Idaho 6, 9, 878 P.2d 180 [App. 1994]). Courts have found that technical breaches of an agreement may be excused if the parties performed the essence of their contractual obligations. See *Almena State Bank*, 24 Kan. App. 2d at 839. In these instances, the "'technical breach of the terms of the contract is excused not because compliance with the terms of the contract . . . is objectively impossible, but because the actual performance is so similar to the required performance that "any breach is immaterial."'" 24 Kan. App. 2d at 839 (quoting *Phoenix Mut. Life Ins. Co. v. Adams*, 828 F. Supp. 379 [D.S.C. 1993]).

Conversely, a material breach is "so substantial as to defeat the object of the parties in making the agreement." *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, 313, 856 P.2d 111 (1993). When a party materially breaches a contract, they are precluded from enforcing the contract against the nonbreaching party until the material breach has been cured. *Bank of America v. Narula*, 46 Kan. App. 2d 142, Syl. ¶ 3, 261 P.3d 898 (2011). In this situation, the nonbreaching party is entitled to "suspend or terminate performance under that contract" until the previous breach is resolved. 46 Kan. App. 2d 142, Syl. ¶ 3.

The tension between substantial performance and material breaches often arises in construction contracts. See *Almena State Bank*, 24 Kan. App. 2d at 840; 15 Williston on Contracts § 44:57 (4th ed.) (May 2024 Supp.). Several considerations are relevant to this assessment, including

> "whether the contractor performed the construction substantially as promised, and whether the owner can use the property for the purposes it intended when contracting with the builder in the first instance, even though there are minor matters that must be completed or corrected, so that it can be said that the owner obtained substantially that for which it bargained." 15 Williston on Contracts § 44:57.

See also *Zhitlovsky v. Valeo Behavioral Health Care, Inc.*, No. 98,272, 2008 WL 1847814, at *7 (Kan. App. 2008) (unpublished opinion) (quoting the nonexhaustive considerations listed in the Restatement [Second] of Contracts § 241 [1979]). When a contractor has substantially performed their obligations under a construction contract, they are entitled to be paid "the contract price, less damages for any minor deficiencies." 15 Williston on Contracts § 44:57.

This question—whether a party has substantially performed their obligations or has materially breached the agreement—is a factual determination resolved by the jury. See *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964, 298 P.3d 250 (2013); *First Nat'l Bank of Omaha v. Centennial Park*, 48 Kan. App. 2d 714, 725, 303 P.3d 705, *rev. denied* 297 Kan. 1244 (2013). Only when all relevant facts are undisputed does this inquiry become a legal decision for the court. 48 Kan. App. 2d at 725.

The jury here was instructed on the law relating to substantial performance and material breaches. After hearing all the evidence presented, the jury found that Alenco did not materially breach the contract when it installed siding with an R-value of 2.2 instead of 4.0. This finding was supported by evidence presented at trial. And although there was conflicting evidence on this point, we do not reweigh that evidence on appeal. *State v. Betancourt*, 301 Kan. 282, 302, 342 P.3d 916 (2015).

The homeowners point out that it was undisputed that the parties' contract stated Alenco would install Cedar Ridge siding with an R-value of 4.0, and yet the company instead installed CraneBoard siding with an R-value of 2.2. They argue that the siding's type and insulation were crucial reasons for their decision to hire Alenco to perform the work on their home. And "'there can be no "substantial performance" where the part unperformed touches the fundamental purpose of the contract and defeats the object of the parties entering into the contract.'" *Almena State Bank*, 24 Kan. App. 2d at 840. Thus,

14

they assert, the jury's finding that Alenco substantially performed its contractual obligations was contrary to the evidence and cannot stand.

Alenco acknowledges on appeal, as it did at trial, that it had installed siding on the homeowners' property with a different R-value than that listed on the contract. But Alenco asserts that ample evidence presented to the jury showed that this difference was not a material breach that vitiated the contract in its entirety. After reviewing the trial record, we agree with Alenco.

The homeowners, along with Alenco's sales representative, agree the R-value of the siding was an important consideration for the homeowners in the construction project. But this was not the only evidence pertinent to the jury's charge. Rather, the parties also presented evidence about the nature of the R-value rating, the reasons why the siding installed had a different R-value rating than what the parties had originally anticipated, and the ways the differences in siding types could be compensated without defeating the purpose of the contract. All these considerations were relevant to the question of whether Alenco had substantially performed its obligations under the contract.

For example, the jury heard evidence that the R-value is essentially a designation about the degree to which the siding insulates a house. Alenco's vice president and sales manager both testified that the difference in the siding installed on the homeowners' house was partly a branding issue (Cedar Crest was also marketed as CraneBoard under a different label) and partly a mix-up due to erroneous marketing materials that Alenco received from the siding's manufacturer (Alenco had not previously known that the product it received had a lower R-value than what was listed in the manufacturer's brochure). Alenco's witnesses explained that the company had offered to compensate for the difference in R-value in other ways, such as supplementing the insulation behind the siding (which it was willing to do at no additional cost) or reducing the contract price to account for the difference in energy savings. But the homeowners were not amenable to

15

these proposals. Based on this evidence, the jury found Alenco substantially performed under the contract and made a good-faith effort to comply with the contract terms, meaning it did not completely forfeit its right to compensation under the contract.

This finding is bolstered by other evidence before the jury demonstrating that the parties' contract was not limited to the installation of siding with a particular R-value. The old siding on the homeowners' house had been removed, and the house had been prepared for the new siding by removing wood rot and installing a moisture wrap. Alenco had also removed the old gutters and had installed new ones. And it had ordered and received custom shutters, but the homeowners had refused to allow it to install them after the homeowners discovered the issue with the R-value of the siding. The homeowners had refused to pay for any of this work.

In a last effort to undermine the jury's findings, the homeowners point to the district court's ruling that Alenco had engaged in unconscionable acts by installing a different siding, which cannot be squared with the jury's finding that Alenco had not materially breached the parties' contract. As we discuss in the next section, we agree that the court's ruling—which in essence found that Alenco had committed several deceptive acts—cannot be reconciled with the jury's finding that Alenco had not knowingly committed any deceptive acts. But that juxtaposition was not the result of a lack of evidence presented to the jury on the breach-of-contract claim. Instead, it was the result of the district court's improper reweighing of the evidence after trial. Whether a party has materially breached a contract is a question of fact for the jury. *Waste Connections of Kansas, Inc.*, 296 Kan. at 964. And there was evidence to support the jury's finding here.

Indeed, the verdict demonstrates that the jury took all of this evidence into consideration. The jury ultimately found that the homeowners must pay Alenco $25,000—the amount due under the contract minus the $2,000 in savings the homeowners would lose out on over the next 20 years without the more insulated siding.

16

There was evidence presented at trial to support the jury's finding that the difference in the siding's R-value did not defeat the purpose of the parties' contract. The district court did not err when it denied the homeowners' posttrial motions seeking to set aside the jury's verdict.

2. *Evidence at trial supported the jury's verdict that Alenco committed no deceptive acts in violation of the KCPA, and the district court erred when it essentially reweighed that evidence to conclude Alenco had engaged in an unconscionable practice.*

As we have noted, the homeowners also brought counterclaims against Alenco under the KCPA, asserting that Alenco had engaged in deceptive and unconscionable practices in violation of the Act. After hearing all the evidence presented at trial, the jury found that Alenco had not knowingly committed any deceptive acts. The district court denied the homeowners' posttrial motions challenging this verdict. But then, considering the same evidence, the court found that Alenco had engaged in an unconscionable practice by committing eight deceptive acts that the jury had rejected. The court imposed a $10,000 civil penalty against Alenco for violating the KCPA and ordered the company to pay $40,000 of the homeowners' attorney fees. And though Alenco had not yet sought attorney fees under the KCPA, the district court preemptively ruled that Alenco was not entitled to attorney fees under the Act.

The parties now appeal virtually every aspect of these various judgments under the KCPA:

- The homeowners assert that the jury's finding that Alenco had not engaged in any deceptive acts was contrary to the evidence presented at trial—they note that the district court found, based on the same evidence, that Alenco's conduct was unconscionable. They also assert that the district court erred when it found Alenco's actions together constituted one unconscionable practice rather than eight

17

separate deceptive practices, each subject to a penalty under the KCPA. And they argue that the district court abused its discretion when it awarded them $40,000 in attorney fees rather than the over $175,000 they had requested.

- Alenco asserts that there was evidence at trial showing it had not knowingly engaged in any deceptive acts. It asserts that the district court's unconscionability decision was really a rehashed assessment of whether Alenco had engaged in deceptive practices, and given the jury's finding, the district court erred when it reweighed the evidence to come to the opposite conclusion. Alenco thus asserts that the district court erred when it assessed a penalty and attorney fees against the company, and the court acted prematurely when it denied Alenco's request for attorney fees under the KCPA before that request was submitted.

Having reviewed the trial and posttrial record, we agree with Alenco that the jury's finding under the KCPA was supported by the evidence. And while it is true that unconscionability typically rests on a legal conclusion drawn by the court, we agree that the district court's analysis in this case was merely a reweighing of the facts already assessed by the jury. This was error. We thus affirm the jury's verdict but reverse the district court's posttrial finding that Alenco had violated the KCPA.

2.1. *The Kansas Consumer Protection Act distinguishes between deceptive acts, which are found by a jury, and unconscionable acts, which are determined by a court.*

The KCPA was enacted to discourage suppliers from engaging in deceptive or unconscionable acts or practices when doing business with consumers. K.S.A. 50-623(b). To achieve this goal, the Act empowers the Kansas Attorney General to prosecute prohibited practices and establishes a private claim for consumers who have been subjected to a supplier's deceptive or unconscionable actions. See K.S.A. 50-633 (actions by the Attorney General); K.S.A. 50-634 (private remedies). Aggrieved consumers may

18

recover either actual damages associated with a supplier's knowingly deceptive or unconscionable practices or a civil penalty of up to $10,000 for each violating act or practice, whichever is greater. K.S.A. 50-634(b); K.S.A. 50-636(a). Suppliers who willfully violate the Act—meaning suppliers who intend to cause harm to the consumers—are subject to penalties of up to $20,000 per violation. K.S.A. 50-636(b); *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 1195, 221 P.3d 1130 (2009).

On the most basic level, a supplier uses deceptive acts or practices when it makes false or misleading statements or insinuations to consumers that it knew or should have known were untrue. The KCPA penalizes deceptive acts or practices in consumer transactions, regardless of whether the targeted consumer was ever actually misled. The Act lists several examples of deceptive representations, including knowingly stating that "[p]roperty or services have . . . characteristics [or] benefits" that they do not. K.S.A. 2023 Supp. 50-626(b)(1)(A). Whether a supplier misrepresented information to a consumer and whether the supplier knew or should have known that the statement was inaccurate are factual questions entrusted to the jury. *Manley v. Wichita Business College*, 237 Kan. 427, Syl. ¶ 2, 701 P.2d 893 (1985).

Unconscionable practices, which the KCPA treats differently than deceptive practices, "'typically involve[] conduct by which a supplier seeks to induce or to require a consumer to assume risks which materially exceed the benefits . . . of a related consumer transaction.'" *State ex rel. Stovall v. ConfiMed.com*, 272 Kan. 1313, 1318, 38 P.3d 707 (2002) (quoting Kansas Comment 1 to K.S.A. 50-627). Unconscionable conduct is "'not necessarily deception'"; it can also involve "overreaching.'" 272 Kan. at 1318 (quoting Kansas Comment 1 to K.S.A. 50-627). Even so, Kansas courts have recognized that most unconscionable conduct penalized by the KCPA involves "'some element of deceptive bargaining conduct present as well as unequal bargaining power.'" 272 Kan. at 1321; see also K.S.A. 50-627(b) (listing seven examples of unconscionable actions that would violate the KCPA).

19

While the deceptiveness of a practice is a factual question for the jury, whether an action is unconscionable is a determination left to the court. K.S.A. 50-627(b). Unconscionable acts committed knowingly (or willfully) are subject to a civil penalty for up to $10,000 (or $20,000) per violation. K.S.A. 50-636(a), (b). Courts have discretion to decide, within the appropriate confines of the facts and the law, whether a supplier's actions rise to the level of unconscionability and the extent of the damages to be awarded or the penalty to be assessed. See *State ex rel. Stovall v. DVM Enterprises, Inc.*, 275 Kan. 243, 249, 62 P.3d 653 (2003).

The homeowners identified 11 aspects of their transaction with Alenco that they claimed were either deceptive or unconscionable. See K.S.A. 2023 Supp. 50-626 (defining deceptive acts or practices); K.S.A. 50-627 (discussing unconscionable acts or practices). They did not allege that Alenco acted willfully when it installed a siding with a different R-value than they had previously agreed. But they asserted that Alenco acted "knowingly"—that the company "knew or should have known" that it was agreeing to install a product that did not exist or was not available. See *Via Christi Regional Medical Center, Inc. v. Reed*, 298 Kan. 503, 521, 314 P.3d 852 (2013).

The central question in this case is one of first impression: K.S.A. 50-627(b) states that the court—not the jury—decides whether an act is unconscionable, and yet the truth or falsity of a representation and the party's intent in making that representation are traditionally questions of fact to be resolved by the jury. Is a judge tasked with assessing unconscionability bound by the jury's findings about the supplier's intent and whether the underlying conduct was deceptive? We answer this question, "yes."

20

2.2.	*The jury's finding that Alenco did not knowingly deceive the homeowners is supported by evidence in the record.*

Before digging deeper into the relationship between the respective roles of the judge and jury under the KCPA, we must first resolve a factual disagreement as to whether the jury's finding that Alenco had not knowingly deceived the homeowners was supported by the evidence.

At trial, the homeowners argued that Alenco had made 11 deceptive statements in violation of the KCPA, including that the "Cedar Ridge siding had a 4.0 R value" and other matters relating to the construction project. The jury found that the homeowners had not shown that Alenco had made any of these misrepresentations knowingly.

On appeal, as in their posttrial motions for judgment as a matter of law and for a new trial, the homeowners limit their argument to Alenco's statements regarding the R-value of the siding. They observe that it was undisputed at trial that Alenco installed siding that was different from that listed in the contract, and they note that the R-value of this siding, which was stated on the box, was different from the R-value listed in the contract. Thus, the homeowners assert the evidence was undisputed that Alenco represented to them that the siding would have "characteristics" or "benefits" that it did not. See K.S.A. 2023 Supp. 50-626(b)(1)(A).

Alenco responds that multiple witnesses testified that this difference was an honest mistake caused by erroneous marketing materials from the manufacturer and that Alenco attempted to ameliorate the situation when it realized its mistake. In other words, Alenco emphasizes that there was evidence that it did not knowingly deceive the homeowners.

As the district court pointed out at the posttrial hearing, the KCPA is not a strict-liability statute. See K.S.A. 2023 Supp. 50-626(b)(1)(A). The jury was asked whether

21

Alenco stated that Cedar Ridge siding had an R-value of 4.0, or made the 10 other statements the homeowners claimed were untrue, while "knowing or with reason to know that those representations were not true." Ample evidence presented at trial supported that Alenco's promise to deliver R-value 4.0 siding was a mistake, rather than a knowing misrepresentation:

- Alenco's vice president testified that Alenco did not know that "the R-value had been changed while the product had remained the exact same." He explained that no one at Alenco had seen a box listing the siding as a 2.2 R-value; the first time it was brought to his attention was when the homeowners contacted Alenco. He characterized what happened as a "very unfortunate misunderstanding" and stated that the manufacturer of the siding still claimed that the siding was "a 4.0."

- Alenco's sales manager testified that he was "shocked" when the homeowners pointed out the difference in R-value because he was "not aware that [the product's box] said 2.2." The sales manager explained that Alenco had been selling the same product since 2001 and "had never been provided any information from the manufacturer that anything had ever changed."

It was the homeowners' burden at trial to convince the jury that Alenco violated the KCPA. *Hernandez v. Pistotnik*, 58 Kan. App. 2d 501, 506, 472 P.3d 110 (plaintiff must prove deceptive acts), *rev. denied* 312 Kan. 891 (2020). But the jury apparently rejected the homeowners' theory and credited Alenco's explanation that it had mistakenly relied on information about the R-value that it received from the siding manufacturer. This finding was supported by the evidence. Thus, the district court correctly denied the homeowners' motions to set aside the jury verdict.

22

2.3. *The district court erred by reweighing the evidence despite the jury's verdict, finding that Alenco violated the KCPA, and awarding attorney fees to the homeowners.*

The homeowners also argue that the jury's verdict should not be allowed to stand because it is directly at odds with the district court's finding that Alenco engaged in an unconscionable practice in violation of the KCPA. Alenco takes the opposite view, asserting that the district court's ruling on unconscionability cannot be reconciled with the jury verdict and must be overturned. These two arguments spawn several other related challenges:

- The homeowners challenge the magnitude of the penalty the district court imposed, asserting that the district court found that Alenco had engaged in eight unconscionable acts or practices but only imposed one $10,000 penalty for the transaction rather than eight separate penalties.

- The homeowners claim the district court erred when it awarded them $40,000 in attorney fees, rather than the $175,000 they requested.

- Alenco asserts the district court should not have granted any attorney fees to the homeowners under the KCPA because the jury's finding showed that it did not violate the Act.

- Alenco argues that the district court's unprompted ruling that Alenco was not entitled to any attorney fees was premature since Alenco had not yet requested attorney fees under the KCPA.

Ultimately, we agree with Alenco that the district court erred when it reweighed the facts that the jury had already decided. It is true that the unconscionability of a supplier's actions is determined by the district court. But once a jury has weighed the

23

evidence presented and made factual findings supported by that evidence, a district court does not have discretion to make factual findings that conflict with the jury's verdict.

As we have noted, the conclusion that a supplier has acted unconscionably involves several analytical steps. The court must first determine whether a supplier knowingly misrepresented some aspect of the transaction or otherwise overreached—a factual assessment. The court must then determine whether this conduct was undertaken in the presence of some recognized vulnerability or imbalance of power—a mixed question of law and fact. If the supplier's behavior meets both criteria, the court has discretion to assess whether this behavior rises to the level of unconscionability that requires a penalty under the KCPA, and if so, what the appropriate penalty should be. See *DVM Enterprises, Inc.*, 275 Kan. at 249 (citing *ConfiMed.com*, 272 Kan. at 1322).

The district court's ruling on unconscionability in this case did not follow this pattern. The court recognized that the jury had found that Alenco had not knowingly deceived the homeowners and denied the homeowners' requests to set aside that verdict. The court then found there was no imbalance of power between the parties and that there was no reason for Alenco to believe either homeowner had a protected legal status—a determination the parties do not dispute on appeal.

Nevertheless, the court proceeded to make extensive factual findings "independent of those [made by] the jury," finding that Alenco "misled" the homeowners in 8 of the 11 respects that had been previously submitted to and rejected by the jury. And the court found that this "method used for closing the sale"—making a "misleading false statement, which it would later disavow, or refute, or attempt to refute, or claim to be impossible to perform"—was unconscionable, as it showed Alenco "was willing to say and promise anything to get the sale, when it did not intend to deliver as promised."

24

As both parties point out, the district court's findings that Alenco knowingly deceived the homeowners in eight ways directly contradicted the jury's verdict. This ruling strayed outside the governing legal framework in at least two notable ways.

*First*, the KCPA distinguishes between deceptive and unconscionable practices. Compare K.S.A. 2023 Supp. 50-626 (deceptive acts) with K.S.A. 50-627 (unconscionable acts). As we have previously indicated, unconscionable practices tend to involve knowing misrepresentations or overreach rendered unscrupulous because of some legal vulnerability or lack of bargaining power between the parties. See *ConfiMed.com*, 272 Kan. at 1321. The district court did not make any of these necessary findings and thus based its unconscionability conclusion on an error of law.

Although the district court described its ruling as an unconscionability finding, our review of the content of that ruling shows it is better described as a second assessment of whether Alenco engaged in deceptive conduct. The district court specifically found that the parties' transaction did not involve any power imbalance inherent in most unconscionability findings. See 272 Kan. at 1321. The district court's findings do not resemble any of the examples of unconscionable conduct listed in K.S.A. 50-627(b). Nor did the court analyze whether Alenco's conduct involved some overreach, other than deception. Instead, the court repeatedly emphasized its view that Alenco knowingly misled the homeowners in an effort to close the deal.

*Second*, Kansas law has long recognized that disputes surrounding a person's intent and whether someone has engaged in deceptive acts are "question[s] of fact for the jury to decide." *Manley*, 237 Kan. 427, Syl. ¶ 2. When those factual findings have been made and are based on evidence in the record, the jury's findings control; courts do not second guess the jury's parsing of the facts or its credibility assessments. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

25

The fact that K.S.A. 50-627 reserves the question of unconscionability for the court does not give a judge free reign to invade the jury's realm or reweigh the evidence on claims that have already been decided. We appreciate that the district court would have reached a different conclusion on many of the matters presented to the jury in this case regarding Alenco's representations during the course of this transaction. Such is the nature of our court system, which allocates the responsibility to make factual findings and render legal rulings between the jury and the court. But the jury's finding that Alenco had not knowingly engaged in any deceptive practices was supported by evidence at trial.

This is not to say that all unconscionable practices involve deception, or that a jury's finding that a supplier did not engage in deceptive acts precludes as a matter of law a conclusion that the supplier acted unconscionably. There may be circumstances when a supplier engages in business practices that are not misleading but are still unconscionable because they unfairly take advantage of a consumer's legal vulnerability. See, e.g., Kansas Comment 2 to K.S.A. 60-527 (1973) (providing examples of unconscionable practices involving overreach or where the consumer is unable to recognize a material benefit to the transaction, even in the absence of deception by the supplier). But the district court here found no such conduct.

In sum, the district court erred when it reweighed that evidence and came to an opposite conclusion on eight allegations—previously rejected by the jury—that Alenco had engaged in deceptive conduct. Beyond these reassessments of the jury's actions, the district court again erred when it provided no explanation for its conclusion that Alenco engaged in an *unconscionable*—not a deceptive—practice. We thus reverse the district court's unconscionability ruling and the resulting civil penalty assessed against Alenco, and we remand with directions that judgment be entered in Alenco's favor on that claim.

Because we have reversed the court's unconscionability ruling, several of the parties' remaining questions fade away.

26

- Because the district court erred when it assessed a $10,000 penalty against Alenco, we need not consider the homeowners' assertions that the district court should have assessed eight separate $10,000 penalties for each of the misrepresentations the court identified in its ruling.

- We also need not consider the homeowners' challenge to the size of the district court's attorney-fee award. Because the homeowners have not prevailed on either of the KCPA claims, there is no basis for attorney fees under that Act. See K.S.A. 50-634(e)(1). We must therefore vacate the district court's attorney-fee award.

As the fallout from the district court's KCPA ruling settles, we are left with one trailing, related argument. Alenco argues that the district court erred when it preemptively noted in its ruling that the company was not entitled to attorney fees under the KCPA, even though it had prevailed on the claim before the jury. Alenco asserts that the district court's ruling was premature, as Alenco had never filed a motion for attorney fees under the KCPA. Our review of the parties' discussion is more nuanced.

It is true, as Alenco points out, that the company never sought attorney fees based on the KCPA. The district court acknowledged as much at the hearing on the parties' posttrial motions:

> "That supplier attorney fee provision [under the KCPA], I think, has to do with claims that were—that had no basis. It's almost a, like a 60-211-type of sanction, if this—if the supplier prevails. I don't think in this case that the KCPA claims were brought without a reasonable basis.
> "Again, you can file your motion. I'll listen to you. But if it'll save you some money, I can tell you what my understanding of the law is and my understanding of the facts as they're fresher now than they're going to be in a couple months when we hear your motion, because I've just gone over them again.

"I don't think there was a lack of a reasonable basis. I think they got a jury that weighed the facts differently."

Alenco is correct that the district court's comments were technically premature. Courts generally do not answer questions before the parties ask them. Rather, we "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S. Ct. 2559, 171 L. Ed. 2d 399 (2008). The district court therefore should have waited to see if Alenco requested attorney fees beyond the amount listed in the parties' contract before it preemptively explained that any such request would be denied.

We note, however, that the district court was correct in its statement of the legal principles that would guide a supplier's request for attorney fees under the KCPA. Under K.S.A. 50-634(e)(1), a supplier who prevails on a KCPA claim can only recover attorney fees if the consumer knew their allegations to be "groundless." And though the homeowners were ultimately unsuccessful on their claims under the Act, reasonable minds could—and, as the history of this case demonstrates, *did*—differ on what conclusions can be drawn regarding the parties' transaction. Alenco does not dispute this finding. The district court acted within its discretion when it found that the circumstances here do not warrant an additional attorney-fee award for Alenco under the KCPA, and we do not disturb the district court's decision here.

3. *The parties have not shown other errors in the district court's rulings.*

The parties raise two additional claims that we must address before we close. First, the homeowners assert that the district court should have granted their motion for a new trial based on a posttrial allegation concerning the presiding juror during deliberations. Second, Alenco asserts that the district court erred when it imposed a monetary sanction after the trial based on a pretrial discovery dispute. These allegations require some further

28

factual development. But the parties have not shown that either of the district court's conclusions requires reversal.

    3.1.    *The district court did not commit reversible error when it denied the homeowners' request for a new trial based on juror misconduct.*

As we have noted, the homeowners filed several posttrial motions challenging the evidence supporting the jury's verdict and seeking a new trial or judgment as a matter of law. The homeowners later filed a "supplemental" motion for a new trial alleging that the presiding juror had engaged in juror misconduct.

The supplemental motion attached an affidavit from another juror declaring that the presiding juror had referred to his own experience in having siding replaced on his house. According to the attesting juror, the presiding juror had shown other jurors pictures of his siding on his cell phone, stating the R-value of the siding was "not a big deal" because his siding did not have that rating and "still looks good." The homeowners argued that this had called the integrity of the jury's verdict into question and thus required a new trial. The district court denied the motion, stating that an inquiry should have been made and addressed while the jury was still present.

K.S.A. 60-441 states that "no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent or dissent from the verdict . . . or concerning the mental processes by which it was determined." The prohibition against inquiring into a juror's mental process allows for confidentiality in the jury's deliberations, protection against corruption of jurors following discharge, and finality of jury verdicts.

But there are limited situations—beyond assessing the jurors' deliberations—when it may be relevant or necessary to examine jurors' actions. These generally relate to the

29

integrity of the judicial process itself. For example, a district court may allow a juror to testify if that person believes the jury "intentionally disregarded the court's instructions." *State v. Wainwright*, 18 Kan. App. 2d 449, 453, 856 P.2d 163 (1993). And courts have discretion to consider evidence of the "physical facts, conditions, or occurrences of juror misconduct which come to the attention of other members of the jury panel which may be verified or denied." *Vallejo v. BNSF Railway Co.*, No. 119,100, 2021 WL 402066, at *7 (Kan. App.) (unpublished opinion) (citing *Williams v. Lawton*, 288 Kan. 768, 799, 207 P.3d 1027 [2009]), *rev. denied* 313 Kan. 1046 (2021).

The practical effect of these limitations is that whenever a party alleges juror misconduct, the district court must first answer "a threshold question whether juror testimony may be received"—that is, if "the evidence will not probe into the mental processes of the jury"—"to establish the misconduct." *Johnson v. Haupt*, 5 Kan. App. 2d 682, 685, 623 P.2d 537 (1981). A party seeking to impeach a verdict based on juror misconduct must demonstrate both that misconduct occurred, as we have defined it here, and that the misconduct substantially prejudiced that party's right to a fair trial. *Stover v. Superior Industries Int'l, Inc.*, 29 Kan. App. 2d 235, 243, 29 P.3d 967, *rev. denied* 270 Kan. 903 (2000).

If the presiding juror here had merely been discussing his own recently completed siding project, this conversation may have fallen into the realm of jurors' experiences and mental thought processes. But that is not what occurred. The affidavit attached to the homeowners' supplemental motion states that the presiding juror took out his cell phone and showed other jurors pictures of the siding on his house. This conduct is akin to considering an exhibit that was never offered by the parties or admitted by the court. We note that the district court instructed the jurors that they "must consider and weigh only evidence which was admitted during the trial, including exhibits, admissions, stipulations, and witness testimony." The presiding juror's actions, as described by the affidavit, did not comply with this instruction and was misconduct.

30

But not all juror misconduct requires reversal, and the homeowners have not met their burden of demonstrating that the presiding juror's action here affected the jury deliberations or verdict. See *Stover*, 29 Kan. App. 2d at 243. The affidavit merely describes the presiding juror's actions on his cell phone. It does not state that this conduct swayed the affiant's own actions or otherwise affected the decision-making process of the other jurors. In short, the homeowners' assertions in their supplemental motion are based on speculation; they have not shown that the presiding juror's behavior affected the jurors' decision or the outcome of the trial.

Indeed, the allegations here are distinct from instances where our Supreme Court has found prejudicial jury misconduct based on the introduction of external evidence into deliberations. In *Kaminski v. Kansas City Public Service Co*. 175 Kan. 137, 139-40, 259 P.2d 207 (1953), several jurors visited the scene of a collision and started measuring distances between certain points in the street. And in *Barajas v. Sonders*, 193 Kan. 273, 273-74, 277, 392 P.2d 849 (1964), a juror made several measurements and calculations about the point of impact in an auto accident using a slide ruler. In those instances, the external evidence was tailored to the specific facts of the case. The photo of the presiding juror's siding was anecdotal at best and is easily distinguishable.

The homeowners' argument that the district court erred by not recalling the jury to determine whether misconduct occurred is similarly misplaced. The homeowners never filed a motion to recall the jury. Accord *State v. Smith-Parker*, 301 Kan. 132, 166, 340 P.3d 485 (2014) ("'Jurors may be recalled for post-trial hearings only by order of the court after a hearing on a request to recall the jury.'"). Rather, the homeowners' argument about juror misconduct was raised in their motion for a new trial, months after the trial.

To some extent, the complicated beauty of the jury system stems from its reliance on jurors' combined experiences and common sense to make factual assessments of the

evidence presented at trial and apply the law to that evidence as instructed by the court. But the jurors' deliberations must be limited to the evidence at trial, and the presiding juror's actions here violated this principle. Even so, the homeowners have not shown how the presiding juror's actions improperly affected his or the other jurors' assessment of the facts in this case. Nor have they shown that the jurors refused to follow the law as instructed by the judge or refused to consider evidence presented. Thus, the district court did not err when it denied the homeowners' motion for a new trial based on juror misconduct.

3.2.    *Alenco has not shown that the district court abused its discretion in imposing a $2,500 discovery sanction.*

Alenco argues that the district court erred when it ordered the company to pay a $2,500 discovery sanction after trial. Alenco asserts that although the discovery issue had been addressed before trial, the pretrial order did not indicate that there was a pending issue relating to discovery sanctions that needed to be resolved. The homeowners counter that the district court had granted their motion for discovery sanctions in a pretrial hearing but took the amount of the sanction under advisement until after trial.

We pause to provide some context. Before trial, the homeowners filed a motion arguing that Alenco committed a discovery violation by directing one of its corporate representatives not to answer questions during a deposition and asking the district court to impose sanctions. That motion is not included in the record on appeal. The district court then held a pretrial hearing on that motion in April 2022. That transcript is also not included in the record on appeal. After trial concluded, the parties submitted briefing on the discovery-sanction issue and discussed the matter at the posttrial hearing. The district court then ordered Alenco to pay a $2,500 discovery sanction in its written order.

Alenco has not provided us with the transcript of the pretrial hearing where the discovery motion was heard. We acknowledge the homeowners' argument that the bench notes may provide some limited insight into what happened at the pretrial hearing. But this does not resolve our concerns about the adequacy of the record before us. The error that Alenco claims—that the discovery motion was fully resolved and could not be revisited because it was not listed as a pending motion in the pretrial order—cannot be reviewed without a record of what occurred during that hearing.

"An appellant has the burden to designate a record that affirmatively establishes the claimed error. Without such a record, an appellate court presumes the action of the trial court was proper." *State v. Auch*, 39 Kan. App. 2d 512, 524, 185 P.3d 935 (2008). Alenco has not provided this court with a sufficient record to review the alleged error about the district court's authority to order a posttrial discovery sanction against it. We thus presume the district court's actions were appropriate. See *Deutsche Bank Nat'l Trust Co. v. Sumner*, 44 Kan. App. 2d 851, 861-62, 245 P.3d 1057 (2010) (district court has broad discretion to impose discovery sanctions), *rev. denied* 292 Kan. 964 (2011).

CONCLUSIONS

The jury's verdict denying the homeowners' breach-of-contract counterclaim was not against the weight of the evidence. Neither was the jury's verdict concluding that Alenco did not violate the KCPA.

The district court erred by finding that Alenco committed an unconscionable act in violation of the KCPA, as that ruling was in essence a retrial of the jury's finding that Alenco had not engaged in deceptive practices. We reverse that finding and direct the district court to enter an appropriate order in Alenco's favor in line with this opinion. And we vacate the related monetary rulings: the $10,000 civil penalty against Alenco and the $40,000 in attorney fees awarded to the homeowners.

33

The district court correctly found that the homeowners' juror misconduct allegation did not warrant a new trial.

We presume that the district court had authority to sanction Alenco for a discovery violation posttrial because Alenco failed to furnish this court with a sufficient record to review the alleged error.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.